The action was brought upon a promissory note for $2,500, made by one of the defendants, and indorsed by the other, at the city of Buffalo, payable in the city of New York in seventy-five days from its date. The note was discounted at the plaintiff's bank in Buffalo for the benefit of the maker; the other defendant having indorsed for his accommodation. The defendants, in their answer, set forth and they offered to prove on the trial that, when the note was discounted, the exchange between the cities of New York and Buffalo was, and had been for a long time previous, one-half of one per cent in favor of the former place, and that both the parties expected and believed it would continue so to be until the maturity of the obligation; that both the maker and indorser resided at Buffalo; that they had no funds or business in New York; that they had no expectation of funds there to meet the note when due, except as they should provide the same at Buffalo for the particular purpose of paying the note; that these facts were known to the plaintiff's bank; and, finally, that the transaction was entered into with the design and for the purpose, entertained by both parties, of enabling the bank to realize, in addition to the legal rate of discount, the one-half per cent exchange on the sum of $2,500. I have stated the allegations and the offer of proof, according to their substance and effect; and I am of opinion that if usury can be predicated of any obligation to pay money, made at one place and payable at another, both within this State, on account or by reason of the rate of exchange between the two places, the evidence should have been received; and if the facts had been proved according to the offer, then that the jury should have been directed to find their verdict for the defendants. The question, therefore, is, whether usury can be alleged in respect to such contracts.
A brief consideration of the subjects of exchange and reëxchange, and of the damages to be recovered by suit at law on the dishonor of bills and notes, will, in the first place, be proper. In regard to bills of exchange, the undertaking of every drawer and indorser is, that the bill shall be paid at the time *Page 136 
and place of payment; and if it be not, the holder is entitled to indemnity for the loss arising from this breach of contract. This undertaking, and the rates of exchange which occur between different States and countries, are the foundation of a rule, adopted by commercial nations, that the holder of a foreign bill is entitled, upon its dishonor, to recover against the drawer and indorser a sum in damages which, in addition to interest and expenses, will cover the amount of exchange, according to the rate prevailing for the time being. The holder of such a bill, as soon as it is dishonored, has a right, by the law merchant, to draw, at the place where it ought to have been paid, a new bill upon the original drawer or indorser in the country where the first bill originated; and the redraft may be for such an amount as will afford a perfect indemnity. If the rate of exchange is against the place where the first bill was drawn, the redraft drawn at the place where it was payable will, of course, be at a discount, and the exchange must therefore be included in order that the redraft may produce, by immediate negotiations, at the current rate, the sum required to make the indemnity complete. It is not essential that the holder of the protested bill should actually redraw upon the parties residing in the country from which it came. He has the right to do so, including the reëxchange; and this determines the measure of damages due to him, although the account may be left for future adjustment or litigation. These are general principles of commercial law in reference to foreign bills; although in this country, or, at least, in many of the States of the Union, they are modified by local regulation or positive statute, substituting a fixed per centum of damage in place of the uncertain measure resulting from the fluctuations of trade and exchange. (3 Kent's Com., 116, 117; Story on Bills, §§ 399-404; Scdg. on Damages, 243, 244,and cases cited in those authorities; 1 R.S., 770, §§ 18, 19.)
It can scarcely be said, however, that these doctrines form a part of the law merchant in regard to promissory notes and commercial balances of account, although due and payable in a State or country different from that where the debtor *Page 137 
resides, and where the obligation is sought to be enforced. On the contrary, in this State, and in Massachusetts, it has been distinctly held, that such debts are to be paid according to the par of exchange, and that the creditor is not entitled to any compensation for the difference of exchange between the country where the suit is brought and the country where the debt was payable. (Martin v. Franklin, 4 John., 124; Scofield v.Day, 20 id., 102; Adams v. Cordis, 8 Pick., 260.) The opposite doctrine was, however, held, in the Federal Circuit Courts, by Justices STORY and WASHINGTON. (2 Wash. C.C., 168; 3Sumn., 523.) Without attempting to decide between these conflicting authorities, there can be no hesitation in saying that indemnity for the loss of exchange is, in justice, as much due upon a note or balance of account payable in a foreign country, as upon a bill of exchange of the like character.
This particular point need not be determined, because whatever may be the rule in regard to notes and balances due out of the State or sovereignty where the debtor resides, there is no such question in reference to inland or domestic obligations of any description. In respect to these there is not the slightest trace in the commercial law of any rule which allows to the creditor more than the face of his debt, at the par of exchange, with interest and the expenses of protest, c. Whether it be a bill of exchange, a promissory note, or any other form of obligation, the rule of damages is the same, excluding from consideration in all cases the rate or difference of exchange between places in the same State. This distinction between foreign and domestic bills, extending also, according to some authorities, to promissory notes and other debts, is founded on a difference in the circumstances. The exchange between different countries is affected by the comparative weight and purity of the coin in each. It is also liable to sudden and considerable fluctuations, in consequence of the revulsions in foreign trade and commerce; and it is more or less influenced by political and other events, which can have little or no effect upon the course of trade and exchange between different points *Page 138 
within the same sovereignty. The law merchant, therefore, in adjusting the rights and obligations of parties to foreign bills, takes notice of the prevailing rate of exchange, and allows it to be estimated as a part of the indemnity which is due for the non-performance of the contract. But the same causes do not operate upon the internal commerce of a State. The standards of currency are the same at all places within its boundaries; intercourse and trade are uninterrupted, and a single jurisprudence pervades every part of it. It is true that slight irregularities in trade will occur, and that a small rate of exchange may arise, in the course of dealing, between different places. But these are facts unacknowledged in the system of commercial law. They suggest no principle, and they have never afforded the foundation for a legal conclusion.
In the light of these principles, the question of usury involved in the present case is capable, I think, of a clear and satisfactory determination. The note in controversy was made and indorsed by residents of this State, and was payable within this State. It was strictly an inland, or domestic obligation. If the note had been paid at maturity in the city of New York, and the rate of exchange had continued to be one-half of one per cent in favor of that place, the bank at Buffalo, which discounted and still owned it, would have realized an advantage to that extent, because the fund in New York could have been sold at Buffalo, by a draft thereon, at a corresponding premium. Such would have been the practical result, if the maker of the note had paid it at the place specified, when it became due. But there is nothing in the law of the contract which secured that result, because the rule of damages, in an action brought upon the dishonor of the note, allows no indemnity for the loss of exchange. The extent of the obligation is to be ascertained according to that rule only. The law knows no other mode of ascertaining it. At any time after the protest of the note, the maker could tender to his creditor at Buffalo the sum expressed in it, with interest, and the usual expenses, in full discharge of the contract. The holder could demand nothing in addition for his loss in not having the funds *Page 139 
placed to his credit in the city of New York, where they would have been worth to him one-half of one per cent more. Indeed, the very judgment now appealed from, in determining the validity of the contract, has truly ascertained and declared its interpretation and effect to be, that the defendants are liable for the sum loaned, with lawful interest, and no more.
This construction of the contract, which is, confessedly, the true one, can only be founded on the proposition that a given sum of money is of the same legal or theoretical value in all parts of this State. By the Constitution of the United States, gold and silver only can be lawfully tendered in payment of debts; and as the same amount of coin will discharge the debt everywhere, the judgment of the law must be, that it is everywhere of the same value, although, in actual dealing, a rate of exchange may occur between different places. And if the law will not discriminate between the values at one place or another, in construing the contract, it seems to me a plain conclusion, that it cannot thus make the discrimination for the purpose of avoiding the contract altogether. A promissory note may be given for money lent or for goods purchased, payable at a place within the State to which the rate of exchange is favorable. In either case, the construction and effect of the instrument are the same. The measure of damages, and the legal extent of the obligation, are the face of the note and lawful interest. In the one case, no question of usury can arise, because there is no loan of money. In the other, there is no usury, because, in judgment of law, there is no agreement to pay more than the legal interest.
These conclusions may appear still more evident when we consider that a debtor, wherever he may reside within the State, can be compelled to pay the debt at the par of exchange in any city or county of the State where he may happen to have real or personal estate. The judgments of the courts for the recovery of debts are of the same force and effect everywhere, and execution may go to any county where property can be found. Thus, in this very case, the debtors may have real or personal estate in the city of New York liable to execution, *Page 140 
and such might be the fact, even if the note had been payable at Buffalo; so that a legal process executed upon property in the city, would give to the creditor all the advantage of exchange, although no such advantage was contemplated in the contract. Indeed, the contract may be strictly a Buffalo or an Ogdensburgh contract, because made and payable there, and yet, at its maturity, both parties may reside in New York. In case of non-performance the law will make the satisfaction in New York, without regard to the higher value of money in that place. On the other hand the contract may be, as in this case, a New York contract, but if enforced by legal process in Erie or St. Lawrence counties, the satisfaction will be complete, although made in money depreciated for the time being by the course of trade and exchange. Again, the debt may be one for which the person of the debtor can be taken in execution, and if so he can be arrested wherever, within the borders of the State, he may be found. In ascertaining the sum required to be paid in order to entitle him to a discharge, no reckoning can be made of the rate of exchange, whether for or against the place where he is imprisoned. The same amount of legal currency will set him at liberty in every part of the State. So, again, the contract may specify no place of payment. In such a case a tender of the debt must be made to the creditor, wherever he may reside. If he reside at the place in favor of which there is a rate of exchange, the tender must, nevertheless, be made at the par value of the currency tendered.
These and other similar illustrations which might be suggested, tend, I think, greatly to strengthen the conclusion that the law does not, for any purpose affecting the construction or validity of the contract, acknowledge a difference in the value of money at different points within the territory of the State. They certainly show that the law itself, under a great variety of conditions, will produce the very results, which, being contemplated in the contract, are said to impart the taint of usury. A note made in the country and payable in the city, is said to be void for usury, when the exchange is in favor of the latter. *Page 141 
But if not so payable according to its terms, yet the law requires the debtor to go to his city creditor, and there make a tender in coin at the par of exchange. So, if the debtor have property there, the debt may be collected by legal process, wherever the parties may reside, and without regard to the place of payment specified in the contract. It cannot, I think, be unlawful to stipulate for that which the law itself exacts in such varied circumstances, especially when we consider that the stipulation gives no advantage to the creditor when he comes to enforce the contract at the debtor's place of residence in the interior.
No one has ever supposed that contracts like the one in question were usurious, where the borrower expected funds at the place of payment arising in the course of his own business (for example, out of a consignment of property) in order to meet his obligation. But the distinction between such a case and one like the present rests upon no solid foundation. In both instances, the gain to the creditor, and the loss to the debtor, if any, are precisely the same.
If there be a course of exchange in favor of the place of payment, the debtor's funds at that place are worth a premium at the place of the contract. If he gives them to the creditor in discharge of the obligation, it would seem to be plain that the lender gains, while the borrower loses, the amount of such premium. But if we hold such transactions to be infected with usury, we unsettle the very foundations of business and credit. No one is prepared for such results; and yet there is no way of avoiding them, and at the same time of maintaining a consistent rule of law, unless we hold that the place, as well as the time, of payment may be agreed on between the parties, without bringing the validity of the contract into question and doubt.
The cases cited to sustain the defence do not conflict with these views. In The Seneca County Bank v. Schermerhorn (1Denio, 133), the note was payable at the country bank where it was discounted. No question like the present could, therefore, arise. The usury consisted in requiring the maker to *Page 142 
deposit in the bank, at par, a draft on New York, worth three-fourths of one per cent premium, and this was considered equivalent to exacting the payment in money of a sum equal to the premium as the condition of the loan. In Williams v. Hance (7Paige, 581), a bond and mortgage were given for the forbearance of a previous debt; and the new security included $20 for the creditor's traveling expenses, and fifteen days' extra interest under a pretence that it would take that length of time to transfer the money, when paid, from Glens Falls, where the debtor resided, to the creditor's residence in New York. On these grounds, the bond and mortgage were held to be usurious. InMerrit v. Benton (10 Wend., 117), a note was given on the extension of a prior debt, which, besides interest, included one per cent exchange between Utica, where it was made payable, and New York, the residence of the creditor. This was held not to be usurious. In The Ontario Bank v. Schermerhorn (10 Paige,
109), the loan was made in a draft drawn by the country bank, payable in New York, on which a premium was charged, not exceeding the rate of exchange. The court held there was no usury in the transaction, the draft being given for the accommodation of the borrower himself. Instead of the money, he preferred a draft on New York, at the current price. The transaction was clearly a lawful one. The case of The Cayuga County Bank v.Hunt (2 Hill, 635), involved a similar principle; and the decision was the same way.
Upon the whole, we are of opinion that the facts alleged in the answer had no tendency to establish the defence of usury, and, therefore, that the evidence was properly excluded.
The judgment must be affirmed.