PRICE *vs.* THE LYONS BANK and ROBERT B. SUTTON.

Where payees residing in the country, of promissory notes payable at a bank in Albany, consent to renew the same, at the request of the maker, on condition that he shall give a new note, payable in Albany, and pay the discount, with one half of one per cent in addition, for the difference of exchange between the two places, which is accordingly done, the transaction is not *usurious.* JOHNSON, J. dissented.

The fact that the renewal note is made payable at an Albany bank—even if it was the intention of the parties to secure to the payees more than legal interest—will not affect the law of the case; it being lawful to exact the actual difference of exchange on the amount of the note, whatever was the intention in making the exaction.

APPEAL from a judgment entered upon the report of a referee. The action was brought to set aside, and have given up to be canceled, a bond and mortgage, made by the plaintiff to Sutton, one of the defendants, on the ground of usury. The Lyons Bank was an individual bank; Parshall & Westfall, as copartners, being the owners thereof, and conducting the business of banking, at Lyons, under the name and style of the "Lyons Bank." Parshall & Westfall put in an answer in their own names, and on the trial the complaint was amended, substituting them as defendants in the place of the Lyons Bank. It was claimed on the trial, and evidence was given tending to prove, that the bond and mortgage belonged to Parshall & Westfall from the beginning, and was

taken by them in the name of Sutton, to avoid the defense of usury. The consideration of the mortgage was the amount due on two promissory notes of $750 each, given by the plaintiff to Parshall & Westfall, with the interest thereon, and the costs of a suit commenced on these notes, and about $400 in money. To show that the consideration of the mortgage was usurious, the plaintiff proved that on the 6th of November, 1855, Parshall & Westfall held three promissory notes, previously discounted by them, against the plaintiff; two for $1000 each, and one for $2000, and all payable in the city of Albany. One of the $1000 notes became due on the 31st of October, and was protested; the other $1000 note became due on the 8th of November, and the $2000 note became due on the 6th of November. On that day the plaintiff made an arrangement with Parshall & Westfall to renew the two last mentioned notes; and by that arrangement he was to give a new note for $3000, payable in Albany at 22 days, and to pay the discount with one half per cent exchange, and the notes were to be ordered back from Albany, where they had been sent for collection, and surrendered to the plaintiff. The agreement was carried out. When the $3000 note became due, a further renewal was agreed on; and by this agreement the plaintiff was to pay $300 in money, and give three notes, one for $700, payable at 15 days, and two for $1000 each, payable at 30 and 45 days, in the city of Albany. The plaintiff was to pay the discount, and one half per cent exchange, and the $3000 note was to be ordered back as before, and surrendered to the plaintiff. The agreement was carried out, and the notes made as above stated. These three notes were subsequently and successively renewed, partial payments being made, until two notes of $750 each were given, and which became due in October, 1855. These notes were protested, and a suit was instituted by Parshall & Westfall upon them, which was discontinued. Subsequently a suit was brought upon the same notes, in the name of one Graham; Parshall being one of the plaintiff's attorneys. In this suit Price put in an

Price *v.* The Lyons Bank.

answer, without oath, denying generally the allegations of the complaint. This suit was discontinued when the mortgage was given; the notes and costs of the suit, as before mentioned, constituting part of the consideration of the mortgage. The defendants offered in evidence the defendants' answer in the case of *Graham* v. *Price,* which was objected to, and the objection overruled, and the plaintiff excepted.

After the testimony on the part of the plaintiff had closed, the defendants moved for a nonsuit, on the following grounds: That the discounting the note and purchasing the draft of $1000 on the 5th January, 1856, was a new and independent transaction, and had no relation to, or connection with, the former dealings between the plaintiff and the defendants Parshall & Westfall. It was an ordinary and legal transaction; and the fact that the plaintiff applied the draft to the payment of the note due at the Albany City Bank, February 21, 1856, does not in any manner connect it with the note so due. When the plaintiff received the drafts from these defendants, he could do with it as he pleased, and could either apply it to the payment of that note, or use it in his business, or in the payment of any other debt. So in relation to the discount and purchase of the draft on the 21st day of January, 1856, and to all the subsequent discounts and drafts. The settlement of the suit commenced by Graham, and the agreement thereupon to pay the notes upon which the suits were commenced, and the costs, was an admission by the plaintiff of the validity of the notes; and he cannot afterwards set up any defense to the securities taken in such payment, by reason of any defect or illegality in the inception of the notes. The settlement of the subject matter of the action between the parties is conclusive. It is the same as a trial and judgment upon the matters litigated, and a note, as any other security given by a party in such settlement, is valid, notwithstanding any defenses which might have been set up to the action, or have been established on the trial. And in this case, if the plaintiff, on the settlement, had given Graham his

own promissory note for the amount of the two notes in suit, together with the costs of the action, such note would be valid, and the plaintiff, in an action for its recovery, would not be permitted to set up any defense which might have been made to the two notes: the settlement is an estoppel, and the plaintiff cannot go back of it. The referee granted said motion, and nonsuited the plaintiff.

*S. Mathews,* for the appellant. I. The note for $3000 of the 6th of November, 1855, was clearly usurious. There was paid for the loan and forbearance of this sum, for 25 days, $29 and upwards, or a little more than 14 per cent. The three notes given in renewal of the $3000, namely, one of $700 and two of $1000 each, were also usurious. The two transactions were substantially alike, and in both cases the holder realized more than 14 per cent for the loan. (*Seneca County Bank* v. *Schermerhorn,* 1 *Denio,* 133.)

II. The two notes of $750 each, which formed the principal part of the consideration of the bond and mortgage in question, having been given in renewal of the above mentioned usurious notes, were also usurious, and rendered the security given in consideration thereof, void. (*Reed* v. *Smith,* 9 *Cowen,* 647.)

III. The evidence was quite clear that Sutton had no interest in the bond and mortgage. The declarations of Sutton, in connection with the other circumstances in the case, establish it; and the evidence is equally satisfactory that Graham never had any interest in the notes, but that they were sued for the benefit of Parshall & Westfall.

IV. But whether the notes had been transferred to Graham or to Sutton, or not, that circumstance cannot change or affect the rights of the plaintiff. (1.) The notes, being usurious, were void in the hands of either of those parties; and they having been transferred after due, the holders are chargeable with notice of every defense which the plaintiff could have made against Parshall & Westfall. They were not innocent

holders, and any security taken by them for the notes would be just as invalid as if taken by Parshall & Westfall. (2.) Parshall acted throughout as the agent and attorney of Graham and of Sutton. Parshall had notice of all the facts, and notice to him was notice to his principals. (*Story on Agency*, § 140.)

*O. H. Palmer*, for the defendants. I. The notes of August 13th, and September 16th, 1856, for $750 each, were not, nor was either of them, usurious. If the action was by Parshall & Westfall against Price upon the notes, the facts proved would not sustain the defense of usury. No corrupt or usurious agreement is shown, and none is to be presumed. By the testimony of Price, it appears that he was indebted in the sum of $4000, all of which was payable in Albany at the time of his application for discount of the $3000 note, dated 6th of November, 1855. The application for this discount was between the 1st and 5th of November. Only $1000 of the $4000 was then due. Westfall told him he must pay the $1000 note soon, and he would extend the others 22 days; that if he would send a new note for $3000, payable in Albany, and the discount and exchange on the $2000 to mature 6th November, and on the $1000 note to mature 8th November, he would send and get these notes; that Westfall gave him to understand he could not discount notes payable at the Lyons Bank. There is no proof of any agreement whatever at the time the notes were discounted. Price attempts to make out a condition, but the statement is altogether loose and vague. (*Curtis* v. *Masten*, 11 *Paige*, 15. *Lane* v. *Losee*, 2 *Barb. S. C. R.* 56.) The case nowhere shows that it was made a condition of the discount that drafts should be purchased. There was an actual indebtedness which Price was liable to pay, even if the two $750 notes were usurious. There being a valid indebtedness at the time the $3000 note was discounted, the most Price could claim, in equity, would be to have whatever usury he has paid, if any, under subsequent usurious

agreements, applied in reduction of the original debt. (*Crane v. Hubbel,* 7 *Paige,* 413.)

II. The suit being brought by Graham upon the notes, and issue having been joined, and subsequently settled, the amount paid and satisfied, and the notes surrendered and canceled, Price is for ever after estopped from setting up a defense in respect to the notes.

T. R. STRONG, J. The notes of the plaintiff, for $3000, one due the 6th and the other the 8th of November, 1855, which were renewed the 6th of that month, were payable at the Albany City Bank, and were at the time of the agreement for their renewal, between the 1st and the 5th of November, at the latter bank for collection. It appears by the complaint, that when the agreement for renewal was made, the rate of exchange between Lyons, the place of business of the Lyons Bank, and Albany, was one half of one per cent in favor of Albany. Payment of the notes at that time, at the place specified therein for payment, would have secured to the Lyons Bank the benefit of that difference of exchange, and these notes might therefore be regarded as practically worth that difference beyond the sums payable by their terms. The bank could not have enforced by action payment of the notes at Albany, nor recovered any thing as damages for not paying them there; but nevertheless it was lawful to make them payable at that place; in the ordinary course of business they would be paid there at maturity; and the bank might deal with the plaintiff in respect to them upon the assumption that they would be paid at the time and place provided for payment. It might treat them as equal in value to the amount of the notes at Albany, estimating their value according to their terms. No objection of usury in thus dealing with the notes could be made, as they were actually worth so much upon the assumption mentioned. Like notes providing for the payment of interest upon interest to accrue, the law would not compel payment at Albany in the one case, nor of the

interest upon future interest in the other; but in neither case is the stipulation to do so illegal, and in each the parties may voluntarily pay and receive payment and deal in accordance with it. But it is unnecessary to discuss the subject further on principle, as it is fully settled by authority that charges for difference of exchange between different points, in such cases, are lawful. (*Merritt* v. *Benton,* 10 *Wend.* 116. *Williams* v. *Hance,* 7 *Paige,* 581. *The Ontario Bank* v. *Schermerhorn,* 10 *id.* 109. *The Cayuga Co. Bank* v. *Hunt,* 2 *Hill,* 635. *Oliver Lee & Co.'s Bank* v. *Walbridge,* 19 *New York Rep.* 134.)

The circumstance that the notes on the renewal were also to be payable at the Albany City Bank, even if it was the intent of the parties to the transaction to secure to the Lyons Bank more than legal interest, does not affect the law of the case. It was lawful to exact the actual difference of exchange on the amount of them, whatever was the intention in making the exaction; and requiring the notes on the renewal to be payable in Albany, although the rate of exchange at the time was in favor of that city, did not in law secure to the bank any pecuniary benefit, and therefore the intent of the requirement was immaterial. That the rate of exchange would be the same, and in favor of the same place, at the maturity of the notes, as when they were made, was too uncertain to be the basis of a legal adjudication. These views are fully sustained by the court of appeals in the recent case of *Oliver Lee & Co.'s Bank* v. *Walbridge,* above cited.

The transaction of the subsequent renewal, on or about the 5th of December, was of the same legal character with that already considered; and in the view taken of the case the other questions raised by the plaintiff are unimportant.

It follows that the judgment should be affirmed with costs.

E. DARWIN SMITH, J. As I perceive that my brethren do not agree in this cause, and the responsibility of deciding it is in effect necessarily cast upon me, I have deemed it my duty,

considering its importance in point of principle, to look into the case with some care, and to express my own views in respect to the questions presented for our consideration. It seems that on the 6th of November, 1855, the plaintiff was indebted to the Lyons Bank in the sum of $4000, upon three promissory notes, payable in Albany, of which one for $1000 was past due and protested, one for $2000 was due on that day, (the 6th,) and one for $1000 was due the 8th of the same month. On that day the plaintiff gave a new note for $3000, at 22 days, payable also at Albany, to renew the two last mentioned notes, paid the discount on this note and one half of one per cent exchange on the said two notes, and the same were ordered back from Albany by the bank, and delivered up to the plaintiff; the notes then being the property of the bank, and having been sent by it to Albany for collection and payment. Here was a discount made to take up paper, payable in Albany, then held by the Lyons Bank, and in addition to the discount one half of one per cent was exacted, paid and received by way of exchange, making $15 over and above the legal rate of interest. This $15 was received to pay the exchange on the two notes then in Albany, becoming due, and this, it appears, was at that time the difference of exchange between Lyons and Albany, and that sum would be requisite to purchase at Lyons a draft on Albany to meet these notes. The plaintiff could not legally have been required to pay this exchange, but having made his notes payable in Albany, he could only perform his contract by sending the money there, by draft or otherwise, to meet such paper. In the absence of any statute applicable to this class of banks, on the subject of selling drafts to pay their own paper payable at another place, (*International Bank* v. *Bradley,* 19 *N. Y. Rep.* 245; *Leavitt* v *Blatchford,* 17 *id.* 521,) I do not see why the Bank of Lyons might not sell the plaintiff a draft on Albany for $3000 to meet his note, and receive from him the usual premium on such draft; and if this be so, I do not see why the bank might not receive the exchange and undertake to procure the

Price *v.* The Lyons Bank.

notes from Albany for the plaintiff; and this was really what was done on this occasion. The $15 was not paid or received on the discount of the $3000 note, and its payment does not in any way affect the validity of this note. On the maturity of this $3000 note it was not paid, but new notes were discounted at the bank; one for $700 at 15 days; one for $1000 at 30 days; and one other for $1000 at 45 days, and $300 paid in cash, and the discount on these notes was paid, together with exchange on the $3000 note, at Albany as before. These notes were subsequently renewed, and the exchange paid, and the same mode of proceeding by repeated renewals continued till the debt was reduced to the two notes for $750 embraced in the mortgage in controversy in this action. Through the process of these various renewals the ½ of one per cent on the amount of these notes respectively was repeatedly taken, paid and received in the manner aforesaid, by the name and claim of *exchange* between Lyons and Albany, over and above the legal rate of interest. In this way the bank received, and the plaintiffs paid, on the $3000 loaned and on the amount of the debt remaining unpaid, at all times over 14 per cent upon the amount of the loan, for the period of about nine months. This is palpable upon the face of the transaction. Upon these facts, connected with the testimony of the plaintiffs that the several discounts of the notes aforesaid were made upon the express agreement or condition, imposed by the bank, that the said notes should thus be made payable in Albany, I should have supposed before the case of *Oliver Lee & Co.'s Bank* v. *Walbridge,* in the court of appeals, (19 *N. Y. Rep.* 134,) that this was a plain and palpable case of usury, and that the repeated renewals of the plaintiff's paper at short dates, with the payment of exchange to the bank at Lyons on such renewals, was a mere contrivance or device to evade the statute and secure more than the lawful rate of interest on the money loaned. But the only basis for the allegation of usury in the transaction would, in my view, consist in making it a condition of such discounts that the paper should be payable

in Albany, with the intent on the part of the plaintiff to pay, and of the bank to secure and receive, the difference of exchange between Lyons and Albany. If the case were stripped of this feature, there could be no pretense of usury in the transaction. But if the original contract for the discount of these several notes so payable was lawful when made, and not infected with usury by reason of any such condition or agreement—and this must be so if it was as lawful to make them payable in Albany as at Lyons—the notes could not become invalid afterwards; and it cannot violate the law to pay the paper promptly, at maturity, at its place of payment, or to furnish funds to the bank to make such payment, and for the bank to receive the same. In the case of *Oliver Lee & Co.'s Bank* v. *Walbridge,* (*supra,*) it is expressly held that it is not unlawful for a bank to make it a condition of a discount that the paper shall be payable at some other place in the state, with the express object, view and intent of both parties to secure to the lender the difference of exchange between the two places, over and above legal interest. Under this decision all the various notes given by the plaintiff, as detailed in the evidence in this case, payable at Albany, and all the renewals thereof, were entirely lawful and valid; each renewal being a discount of new and valid paper. The bank was of course entitled to receive payment at Albany and to receive the exchange or difference in value between money at Lyons and money at Albany, if the debtor voluntarily paid it at Lyons instead of sending the money to Albany. And the lawfulness of the transaction cannot depend upon the time the paper had to run. Some of this paper was payable in 15 days, some at 22, and some at 30. The shortness of the paper could not affect its validity. It would, on the 15 day paper, enable the lender, it is true, at one half per cent exchange, to make one per cent a month in addition to legal interest; but according to the decision in the case of *Oliver Lee & Co.'s Bank* v. *Walbridge* this is entirely lawful. According to that decision, the receipt of such extra amount by way of exchange, over and

above legal interest, is not the receipt or reservation of more than seven per cent interest on the loan and forbearance of money, and the process by which its payment is secured is not, and cannot be regarded, a *device* or *contrivance* to evade the statute. Under this decision, which is of course binding upon us as authority, however much we may doubt its soundness, (and I am by no means convinced of its correctness,) I can see no ground upon which to hold that the mortgage in this case is usurious. The judgment of nonsuit, therefore, was rightly rendered by the referee, and the judgment should be affirmed.

JOHNSON, J., (dissenting.) I am entirely unable to see why the transaction of giving the $3000 note was not clearly usurious. It was given in renewal of former notes, about to fall due, and was in substance and legal effect but the extension of the time of payment of a pre-existing indebtedness. It was nothing more nor less than a forbearance of the day of payment twenty-two days, with the three days of grace to be added. The notes about to fall due were payable at the Albany City Bank, and as a condition of the forbearance, the plaintiff was required to make, and did make, the new note payable at the same place, and to pay the legal discount, and one half of one per cent in addition, which was called the exchange. This was repeated upon several subsequent renewals, and as long as the renewal notes continued to be made payable at the same bank. At some of these renewals, the extension of time was only fifteen days, when the payment of one half of one per cent called exchange would be at the rate of twelve per cent a year in addition to the legal interest. The result of all these renewals, through a period of several months, was to give the lender, for this forbearance, over fourteen per cent for the use of his money. If this is not usury the statute may as well be repealed at once, or declared inoperative and void by our courts. The case cannot fairly be distinguished from that of *The Seneca County Bank* v. *Schermerhorn*, (1 *Denio*, 133.) That was the case of the renewal of a note, and as a condition

of the extension, the borrower sold to the lender a draft at par, which was worth one half of one per cent premium. The correctness of that decision has never, that I am aware of, been questioned, and it seems to me to apply with full force to the renewal notes from which the mortgage in question sprung. It was said upon the argument, that a note given in renewal of another note is an independent transaction, and not an extension, or forbearance of the day of payment. But this, as was said by Bronson, justice, in the case last cited, "involves a distinction which I cannot see, and which I think none but a usurer can comprehend." And unless I have entirely misapprehended the true character of this transaction, it would puzzle an individual of that character even, however skillful and astute in financial matters, to explain to the satisfaction of one of only common understanding, how there could be such a thing as a difference in exchange between two sums of money, or two obligations, payable at the same place, as were these several notes. There can be no such thing in fact, and I think nothing of the kind exists in commercial usage, and calling it by that name is but a stale and transparent pretense, for an unlawful exaction. It is a common device, in such transactions, to endeavor to hide an unlawful exaction, under some fair and harmless name. I cannot agree with my brethren in the opinion that this case falls within the principle established by the court of appeals in *Oliver Lee & Co.'s Bank* v. *Walbridge*, (19 *N. Y. Rep.* 134;) and feel constrained to protest against such an application of the rule there laid down. That case, as I understand it, was determined upon the ground that by the law of the contract, where the lender only required the borrower to pay the amount loaned to his agent, at any other place within the state than that where the loan was made, with legal interest, nothing but legal interest was embraced in the stipulation, and usury could not be predicated upon it, although the sum paid might be worth something more at the place of payment, to parties residing at the place where the loan was made.

Price *v.* The Lyons Bank.

As a tender or payment of the precise sum agreed upon, with legal interest, by the borrower to the lender, wherever he might be found, in coin, would discharge the obligation the moment it became due, and nothing more could be recovered should the entire contract be enforced by action, it was held that there could exist no usurious element in such an agreement. It seems to have been considered by the court that any premium, or rate of exchange, existing in favor of one point, within this state, against another, at the period of the making and delivery of a time note, although such note might be made, and accepted, with a view and for the express purpose of securing this difference to the lender at the day of payment, yet such anticipated profit was so speculative and unreal in its character, and the course of exchange so uncertain in respect to its continuance in that direction, for any length of time in future, that the arrangement could not, legally speaking, be regarded as securing such premium to the lender, or any profit whatever beyond legal interest, irrespective, wholly, of the statute.

This is precisely what was decided by a majority of this court in *Cuyler* v. *Sanford,* (13 *Barb.* 339,) and which decision has ever since been followed in this district.

This must now be regarded by the profession, and by the courts, in this state at least, as a settled and sound legal proposition, although we may still expect practical bankers and dealers in exchange to reason differently, and under the shield of this rule, to continue to accumulate large and substantial gains and profits, beyond the legal rate of interest, by practicing upon a theory directly opposite. But this is no such case. No room was left in the arrangement in this case, for the operation of any contingency, to defeat anticipated profits. The legal myth, or fiction, of the rate, or premium of exchange, as it seems to be regarded, when resting in expectation only, was here reduced to the palpable and unmistakeable reality of a cash payment, exacted and handed over in advance, and as a condition precedent to the forbearance. If this is not usury,

I can scarcely conceive of à case that would be. In this respect the case at bar differs essentially, and radically, as I conceive, from the two cases above referred to. Had the plaintiff, in the case of the *Oliver Lee & Co.'s Bank* v. *Walbridge,* required not only that the note should be made payable in New York, but that in addition to advancing the legal discount, the borrower should also, as a condition of the loan, pay in advance the half per cent premium of exchange which was expected to accrue to the lender's benefit at the maturity of the note, the case would have been precisely analogous to the renewal notes in question. In such a case, it seems impossible that the court of last resort could decide as they did in the case cited. Indeed the whole reasoning of the court, in that case, would inevitably lead to a conclusion just the reverse, in the case supposed. It is not pretended by my brethren but that the strong and controlling tendency of the evidence, before the referee, when the plaintiff rested his case, was to prove that the mortgage in question, although made to the defendant Sutton, was the direct offspring of these notes. They rest their decision exclusively, as I understand them, upon the authority of the decision referred to in the court of appeals. As that case, in my judgment, does not control, or in any respect affect this, I am of the opinion that the judgment should be reversed, and a new trial ordered.

Judgment affirmed.

[MONROE GENERAL TERM, September 5, 1859. *T. R. Strong, Smith* and *Johnson,* Justices.]