RHODERICK PRICE *v.* THE LYONS BANK and ROBERT B. SUTTON.

In an action upon a promissory note when the defense is usury, it is competent for the defendants to prove that both the maker and indorser of the note resided in Buffalo, and had no expectations of having funds in New York at the maturity of the paper, and that the note was made payable in New York with the design that the plaintiff should realize from the transaction one-half of one per cent in addition to the legal rate of interest.

Upon a renewal of an existing loan by giving new notes payable at the same place as the former, no question of exchange can arise. Any exaction beyond interest in such a case is usury.

And such notes being void, all the securities which follow or grow out of the transaction, are likewise void, as usury contaminates all subsequent securities.

BROWN, J. The case of *Oliver Lee & Co.'s Bank* v. *Walbridge* (19 N. Y., 134), was quoted as authority for the judgment rendered in the court below. The plaintiffs were bankers doing business in the city of Buffalo, and discounted the note of the defendants, which was made payable in the city of New York. They offered to prove, upon the trial, that when the note was discounted, and for some time previous thereto, the rate of exchange between New York and Buffalo was one-half of one per cent in favor of the former city, and that both parties expected that it would continue to be so at the maturity of the obligation; that the defendants, maker and indorser, both resided in Buffalo, and had no expectation of having funds in New York at the maturity of the paper; and that the note was made payable in New York with the design that the plaintiffs should realize from the transaction one-half of one per cent in addition to the legal rate of interest. The proof was rejected, and this ruling presented the question whether the facts offered to be proved constituted a defense to the action. The bank took nothing from the proceeds of the note, at the time of the discount, but the legal rate of interest, and the contract itself was to pay the sum of $2,500 at the time of its maturity, which was seventy-five days after its date. The case presented the single question whether usury could be predicated of a note made and discounted at the legal rate of interest, in one part of the State, and made payable in another, merely because

the rate of exchange at the time of the discount was, and might probably continue, in favor of the latter place. The court came very readily to the conclusion that there was no taint of usury in the transaction. There was no contract to pay more than the legal rate of interest, and no more than the legal rate taken, and that the hope or expectation of realizing the one-half of one per cent spoken of in the proof offered, was uncertain and speculative. That there was nothing in the law of the contract which secured the contemplated result, because the rule of damages in an action brought upon the note allowed no indemnity for the loss of exchange. The court also announced authoritatively the proposition, which cannot admit of controversy, that a given sum of money is of the same legal and theoretical value in all parts of the State. Whether the rate of exchange would continue in favor of the place where the note was payable, for the period of seventy-five days; or whether during that time it might not, through the fluctuations and revolutions of trade or the occurrence of untoward public events, turn in the opposite direction, no one could foresee or make certain, and it has the effect of this uncertainty and inability to fix results, to free the contract from the imputation of illegality sought to be cast upon it. Had the contract provided in terms for the payment of the then difference of the rate of exchange by the maker at the maturity of the note, no one would have doubted its being within the prohibition of the statute. And so, had the difference in the rate of exchange been taken by the bank at the time, in addition to the usual discount, the illegality of the transaction would have been too clear for dispute. And this constitutes the distinction, in my judgment, between the case referred to and that under consideration.

In November, 1855, the plaintiff was indebted to the Lyons Bank, a banking incorporation doing business at Lyons, in the county of Wayne in this State, in the sum of $4,000, in three promissory notes payable at the Albany City Bank, in the city of Albany; one for $1,000, due October 31st, one for $2,000, due November 6th, and one for $1,000, due

November 8th, of the same year. In renewal of the two last named notes for the brief period of twenty-five days, the plaintiff was required to give and did give his new note for $3,000, payable at the Albany City Bank. He was also required to pay the discount at the rate of seven per cent per annum, and one-half of one per cent for the difference of exchange between Lyons and Albany, which he paid accordingly to the bank at the time of the renewal. On the maturity of the note for $3,000, the sum of $300 was paid in cash, and three new notes, payable at the Albany City Bank, were given; one for $700, at fifteen days, one for $1,000, at thirty days, and another for $1,000, at forty-five days. The usual discount was paid upon each of the notes, together with the sum of one-half of one per cent discount for the difference of exchange between Lyons and Albany. These notes were repeatedly renewed in the same way, and by the same mode of proceeding, until the debt was reduced to the two notes of $750 each, embraced in and secured by the mortgage in controversy, given to the defendant, Robert B. Sutton. It is to be observed that through all these various transactions, the bank remained the owners and holders of the notes. It is a moneyed incorporation, and its regular and legitimate business is to discount and collect commercial paper at its own counter. It had no place of business in Albany, and the plaintiff did not reside or do business there. No reason is given, and none is suggested, why the notes were constantly made payable in a distant city; why they were made payable at short dates of forty-five, thirty, and fifteen days, and why the pretended rate of exchange was taken with the regular interest at the time of the repeated renewals. The rule is thought to be a sound one which imputes to a man the intention to bring about that which naturally and reasonably results from his acts. Now the result of this contrivance was to compel the plaintiff to pay, and to enable the bank to receive, more than fourteen per cent upon the moneys loaned for the period of less than three months. The facts present a clear and unequivocal case of usury. It is condemned to this category by the clear and logical argument of the case

of *Oliver Lee & Co.'s Bank* v. *Walbridge* (*supra*), cited in
its support; for if it be an indisputable proposition that a
given sum of money is of the same legal and theoretical
value in all parts of the State, then whenever the Lyons Bank
assumed the converse of the proposition, and took from the
plaintiff one-half of one per cent in addition to the legal
rate of interest, upon the theory that after the lapse of fifteen
or forty-five days, a given sum of money at Lyons would not
be of the same value as it would at Albany, it converted
what was speculation into absolute reality, and it introduced
a vicious element into the transaction which brought it within
the prohibition of the statute which forbids the taking of
more than seven per cent for the loan or forbearance of money.

There is no force in the point that giving the mortgage to
the defendant Sutton was a compromise and settlement
of the litigation. Whatever proof there was, showed that
the giving of the mortgage to him was available only, and
that he had no interest in it whatever. Besides, both the
referee and the court below decided against the plaintiff, and
his complaint was dismissed upon the sole ground that the
contract was not usurious.

In this conclusion I do not concur. I think the judg-
ment should be reversed, and there should be a new trial at
the Special Term or Circuit, with costs to abide the event.

WRIGHT, J. The referee, on the case made by the plain-
tiff, nonsuited him. No ground was stated for the nonsuit;
but if the evidence adduced showed a right of action, it was
improperly granted. I think the judgment of the referee is
not legally sustainable.

The whole case turned upon the transaction in the early
part of November, 1855, in respect to the $3,000 note, the
unpaid balance of which (after division into smaller notes
and repeated renewals) constituted the main part of the
mortgage in suit. The circumstances attending the concep-
tion of this note were not controverted. The plaintiff, in
November, 1855, was indebted to the Lyons Bank in the sum
of $3,000 on two notes, one of $2,000, maturing on the 6th

November, and another of $1,000, maturing on the 8th of that month, and both payable at the Albany City Bank. Between the 3d and 5th of November, the plaintiff, desiring a renewal of these notes, went to the Lyons Bank to arrange for it. He was required by the bank, as a condition of their renewal for twenty-five days, to make a new note for $3,000, payable at the Albany City Bank, to pay the discount at 7 per cent per annum, and also to pay a half per cent for the difference of exchange, as it was termed, between Lyons and Albany. These terms were agreed upon and complied with. The plaintiff made the $3,000 note, paid the discount at 7 per cent on that sum for the 25 days, being $14.38, and $15 in addition, under the name of exchange.

Now, if this was not a usurious transaction it would, in my judgment, be difficult to conceive of one within the statute. The two notes, in renewal of which the $3,000 note was given, though payable at the Albany City Bank, belonged to the Lyons Bank, and had only been sent forward for collection. They had no legal value to the Lyons Bank beyond the amount expressed on their face, although payable in Albany. (*Oliver Lee & Co.'s Bank* v. *Walbridge*, 19 N. Y., 134.) To obtain a forbearance of twenty-five days for the payment of the $3,000, the amount of those notes, the plaintiff paid the discount at 7 per cent on that sum for the 25 days, and $15 in addition, called exchange, amounting in all to the sum of $29.38. This sum was, in fact, paid for the twenty-five days forbearance, being over 14 per cent, as the Lyons Bank had no right to demand exchange. That this rendered the whole usurious and void, seems very clear. (3 R. S., 5th ed., 73, § 5; *Seneca County Bank* v. *Schermerhorn*, 1 Denio, 133; *Williams* v. *Haner*, 7 Paige, 582; *Lee & Co.'s Bank* v. *Walbridge*, 19 N. Y., 141, 142, 144; *International Bank* v. *Bradley*, 19 N. Y., 245.) It is said that the sum exacted by the Lyons Bank, and allowed by the plaintiff as difference of exchange, related to the two notes payable at, and which were at the time, in the Albany City Bank, of which the $3,000 note was in renewal; but upon a renewal of an existing loan, no question of exchange can arise when

the new obligation is payable at the same place as the old. Any exaction beyond legal interest in such a case is usury.

The $3,000 note was, therefore, usurious and void, and all the securities which followed or grew out of it in the regular line of descent, including the bond and mortgage, were void. Usury contaminates all subsequent securities.

In September, 1856, by payments and renewals, the indebtedness had been reduced to $1,500, and was then in the form of two notes of $750 each, which the Lyons Bank (or Parshall & Westfall, who composed it) refused to renew; and soon afterwards they were sued by Parshall, who was an attorney, in the name of one Graham. This suit was subsequently discontinued, and the mortgage in suit taken to Sutton, the defendant, for the amount of the notes, Parshall arranging the whole matter. The strong and controlling tendency of the evidence was to show that the transfer of the notes to Graham was colorable merely, and that the taking of the mortgage to Sutton was of a like character. There is, therefore, no force in the point made on the argument, that the compromise and settlement of the Graham suit was an estoppel and bar to the defense of usury in the notes, and by reason of it, in the mortgage. It was not doubted in the court below, nor can it be, that the evidence before the referee when the plaintiff rested his case, tended strongly to prove that the mortgage in question, although made to the defendant, Sutton, was the direct offspring of these notes.

A majority of my brethren, however, are not inclined to go the length of holding that the evidence disclosed a case of usury in law; but are of the opinion that the referee, instead of nonsuiting the plaintiff, should, under the proof, have passed upon the question whether the transaction was, or was not, intended as a device for evading or violating the statute. From this view, I am not disposed to dissent.

The judgment of the Supreme Court should be reversed, and a new trial granted.

Judgment reversed and new trial ordered. In which all concur, except Davies and Campbell, JJ.