THOMAS S. BEALS, Executor of THOMAS BEALS, deceased, Respondent, *v.* SIMEON BENJAMIN and others, Appellants.

A contract of loan is not rendered usurious by a separate and distinct undertaking between the parties, that the lender is to receive the deposits of the borrower, and to keep them safely, and pay them over on demand, on condition that the notes discounted shall be paid in the city of New York, by means of which an exchange of one-half of one per cent is realized to the lender, on the amounts of the paper discounted.

Where the relation of the party as a borrower is distinct from his relation as a depositor, the two relations will not be confounded with each other to establish the existence of usury.

*J. H. Reynolds*, for the appellants.

*E. G. Lapham*, for the respondent.

DAVIES, J.   This action was brought by the plaintiff's testator, Thomas Beals, as plaintiff, to recover the amount of certain promissory notes held by him, made by the defendants.   The referee who tried the action, found the following facts:

That in June, 1855, the directors of the Elmira and Canandaigua railroad company, a corporation created by the laws of this State, were running the road of said company from Canandaigua to Jefferson, and two other roads of other corporations, one of them from Niagara Falls to Canandaigua, and the other from Jefferson to Elmira, under some arrangement with said other corporations; but they ceased to run said Canandaigua and Niagara Falls road on the 1st of July, 1855, and the other two roads about the 1st of September, 1856, and had a floating debt upon them of about $45,000, coming due to different banks and persons, at different times and in different amounts, which debts consisted of promissory notes, made by said directors, and were all payable in the city of New York, and which fell due at different periods, from the 6th of July to the 26th of November, 1855.   That during said year the plaintiff was and ever since has been doing business

as a banker, at Canandaigua, in this State, that is to say, discounting notes, receiving money and bank bills on deposit; keeping an account with his corresponding banks in the city of New York; selling drafts and exchange on New York, at the current rates of exchange, and doing all the business usual with country bankers, except the issuing of bills. And which selling of exchange during the time aforesaid has been and is a source of profit to the plaintiff, in such business. That in said month of June, 1855, the said directors, at a meeting of the board thereof, at said Canandaigua, appointed the defendants Benjamin and Beeman, two of their number, a committee to wait upon the plaintiff and inquire what accommodation would be received, hypothecated upon the deposits of the company. That said committee, on the same day, had an interview with the plaintiff, at which they proposed, in substance, that Beeman, who was the treasurer of the company, wished to do the banking business of the company at Canandaigua, that being his place of residence, and wished to know if the plaintiff would do it. That he wished to deposit with him the receipts of the company, and the directors would want some accommodation by way of discounts. That in the business of the company, the balances in their favor, from the Erie road, were payable in New York, and whatever paper they had discounted would be made payable there. And it was stated and arranged that the receipts of the company were to be deposited with the plaintiff, and that the plaintiff should discount the paper of the directors, given at three months, payable in New York, to enable the company to carry along the debt for which they were so liable, for the space of one year, the discount upon the notes to be paid or allowed at the time of the discount, *and the exchange at the maturity of each note,* in *case a draft should be purchased to pay the same;* and it was understood that the plaintiff should discount, from time to time, as the said directors should need, to enable them to meet their paper as it fell due, but neither the said directors nor said company were bound to continue such discounts for any definite period or for any specific amounts.

That said committee reported what passed at said interview to said board of directors, which accepted said proposition of said plaintiff. That before such arrangement with the plaintiff, the said directors had not kept the whole of their account with the plaintiff, but had made deposits with and obtained discounts from him. That at the time of making said arrangement, and for a long time before, and ever since the difference of exchange between Canandaigua and New York, was and continued to be, one-half of one dollar on a hundred dollars. That the plaintiff and said directors then knew of such difference, and what it had before invariably been. That pursuant to the said arrangement, the said directors did thereafter keep their account with the plaintiff, depositing with him all their moneys and earnings as received by them, such account being kept during the whole time of the discounts mentioned, such deposits being made until on or about the 16th of October, 1856, when a receiver was appointed of the property and effects of said company. That in pursuance of said arrangement, the plaintiff loaned to said directors at different times and in different sums as wanted by them, and upon their individual notes, the aggregate sum of said floating debt, which notes were, pursuant to said arrangement, made payable in the city of New York, and respectively at three months from date. That at the times of such loans respectively, the discount or interest on said notes was deducted or paid. That when the notes so discounted fell due, they were paid by the directors, by obtaining from the plaintiff new discounts, and purchasing drafts in New York of the plaintiff, and with funds of the company realized in New York, and all the notes discounted by the plaintiff were paid in New York, except the seven notes mentioned in the complaint, and upon which the action was brought. That the notes in suit represent the unpaid part of said loans, and were given under no other or different arrangement than the one before mentioned, and are substituted as renewal notes of the series of notes given under said arrangement. That the defendants, during the whole of said time, were directors as

aforesaid, and are the persons contemplated by said arrange-
ment to be and they were the makers and parties to all such
notes. That in respect to the discounts and deposits, the
relation of the parties to each other was different, and the
obligations incident to them were distinct and unconnected.
As borrowers, the defendants obtained their loans at seven
per cent. As depositors, they had the undertaking of the
plaintiff to keep their money safely, and to pay it to them
or their order on demand. That no usurious agreement was
proven, and that the conversion of property and counter-
claim, set up in and claimed by the answer, was not proven,
and as a conclusion of law, the referee found the notes in suit
were valid, and that the plaintiff was entitled to recover the
amount thereof and interest. Judgment was perfected on
said report, and the same was affirmed at the General Term,
and the defendants now appeal to this court. The plaintiff
having died pending such appeal, the action has been con-
tinued in the name of his personal representative. Upon
the facts found by the referee this is a very clear case.

Usury, in fact, cannot be assumed, as the referee has dis-
tinctly found that there was no usurious agreement. Can it
be predicated as a matter of law, of the ascertained facts?
It seems to me not. It is urged that we are to hold the notes
in suit to be usurious, as given to carry into effect the
arrangement made between the parties, which contemplated
an usurious loan of money. In other words, that by the
true construction of this arrangement, the lender reserved
and took for the money loaned, and the borrower agreed to
pay, more than seven per cent per annum. It is argued that
this is apparent from two circumstances. First, the agree-
ment, by the borrower, to keep their deposits with the lender;
and second, the agreement to purchase exchange from the
lender, with which to take up the notes as they respectively
became due in the city of New York. In relation to the
first ground, we are to look at the transaction as found by
the learned referee who tried the action, and he informs us
that in respect to the discounts and the deposits, the relations
of the parties to each other were different, and the obliga-

tions incident to them were distinct and unconnected; and he finds that the defendants, as borrowers, obtained their loans at seven per cent, and that as depositors they had the undertaking of the plaintiff to keep their money safely and to pay it to them or their order on demand. This is an unequivocal finding of the facts, that for the loan of the money they paid only seven per cent, and that the only obligation incurred by the plaintiff in accepting their deposits, was to keep them safely and pay the same to the defendants or their order, at any time, on demand. It would be a gross perversion of the meaning and intent of the statutes to prevent usury, to hold such a transaction, *per se*, to be usurious. A much stronger case than this is found in the *Utica Insurance Company* v. *Cadwell* (3 Wend., 296). There Cadwell applied to the insurance company for a loan of money, and Cadwell was required to make a note, with sureties, and to effect an insurance with the company, and was given to understand that a renewal of his note would depend upon his giving a good circulation to the paper of the company, and making frequent exchanges with the company. These terms he agreed to, and effected an insurance for one year, and paid a premium of $21. The judge, at the circuit, was requested to charge the jury that the loan was usurious, the insurance being effected as a mere cover to evade the statute, and the insurance and the other onerous terms imposed upon the borrower, giving or securing to the lender more than interest at the rate of seven per cent per annum. This the judge refused to charge, and the jury found for the plaintiffs the amount due on the note. Ch. J. SAVAGE, in the opinion of the court, says: The judge was right in saying that there was no usury in the transaction. The insurance was a lawful act, and the principal business of the plaintiffs, and as it was made at the usual rates of premium, there could be no shift or contrivance in this transaction, whereby the defendants were made to pay more than seven per cent interest on the loan made.

So, in the case at bar, the receiving of deposits was the principal business of the plaintiff, and the making of such

deposits by the defendants, with him, cannot, under the circumstances as found by the referee, be held to be evidence of usury; and the referee has expressly negatived the idea that the same was a shift, device, contrivance or cover for usury. The same form of reasoning applies with equal force to the other ground assumed to establish usury, namely, the arrangement to sell exchange on New York. It is here well to observe precisely what that arrangement was, as found and ascertained by the referee. It was, that in addition to the discount, which was to be paid and taken, and which is not complained of, there was to be taken and received by the plaintiff the exchange, at the maturity of each note, in case a draft should be purchased of the plaintiff to pay the same. It is found that the plaintiff was a banker at Canandaigua, and kept funds in the city of New York; and it was a main part of his business to sell exchange on that city, drawn on those funds, and that the same was a source of profit to the plaintiff in his business. It is also found by the referee, that at the time of the making of said arrangement, and for a long time before, and ever since, the difference in exchange between Canandaigua and New York was one-half of one dollar on the hundred dollars, and that such difference was well known to the plaintiff and said defendants. It must therefore be assumed that the contract or arrangement between the parties, was made with full knowledge of such fact, and it appears that whenever the defendants purchased exchange of the plaintiff, with which to take up notes discounted by him, at the maturity thereof, in the city of New York, they paid for such exchange at the current and usual rate, and no other or greater. In this connection, and for the purpose of ascertaining the motives of the parties in making this arrangement, two circumstances are to be borne in mind. First, the defendants had a floating debt to be provided for, payable in New York; and, secondly, they were in the expectation and receipt of funds from the Erie railroad, payable in that city, and available there, for the reduction and payment of that floating debt, to some extent. It was therefore apparent, for its liquidation and payment,

funds had to be provided for at that point, and these circumstances show the reason for that part of the arrangement, as found by the referee, that the exchange at the maturity of each note was to be paid on a draft on New York, to take up the same, *in case a draft should be purchased to pay the same.* This demonstrates that it was not the understanding or arrangement, as now claimed by the defendants, that a draft was to be purchased and the exchange paid upon each note at maturity, but only when the defendants should require, for the payment of any of their notes falling due in New York, such draft, and purchase the same. There was nothing illegal in the purchase of drafts on New York, of the plaintiff, and paying him the current rate of exchange. This was his lawful and current business, and the finding of the referee incontrovertibly establishes that such dealing in exchange was legitimate, and not a cover, device or shift for usury. The remarks heretofore made in relation to the arrangement for the deposits of the defendants, apply with equal force to this arrangement in reference to the exchange. But even if the plaintiff had imposed it as a condition of the discount of the defendants, that they should be made payable in New York, with a view to secure to himself the difference of exchange, such condition would not have rendered the transaction usurious and invalidated the notes. (*Cuyler* v. *Sanford*, 13 Barb., 339; *Marvin* v. *Hymne*, 2 Kern., 223; *O. Lee & Co.'s Bank* v. *Walbridge*, 19 N. Y., 134; *International Bank* v. *Bradley*, id., 245.) There can be no pretense in the present case, that the plaintiff imposed it as a condition to the discounting of the defendants' notes, that they should be made payable in New York, and that they should purchase drafts of him and pay him the exchange thereon, to retire the same at maturity. These cases are therefore authority for holding that the conclusions of the learned referee were correct. The utmost that could be claimed by the defendants would be that these arrangements were devices or shifts to cover usury. Whether so or not was a question of fact. (*Price* v. *Lyons Bank*, decided in this court at March Term, 1865.) But in this case that fact

has been found adversely to the defendants, and it is conclusive upon their liability to pay these notes.

The judgment should be affirmed, with costs.

All the judges concurred in the result. The judgment was affirmed on the principle that the finding of the referee is conclusive as to the fact that no usurious interest was taken.

Judgment affirmed.