## PICKERSGILL *v.* LAHENS.

A general statute enacted that a party might stay by injunction proceedings in a suit at law on executing a bond, "with one or more sufficient sureties," conditioned, &c. A., a defendant in a case at law, being about to apply for an injunction to stay that suit, did accordingly execute a *joint* bond with B. as co-obligor; B. having no interest in the suit, nor deriving any benefit from the execution of the bond. *Held*, that there was nothing in the language of the statute which compelled the bond to be joint merely, instead of joint and several; and that being in

terms joint merely, and B. being in fact but a surety, there was no right in the obligee (A. being insolvent) to pursue B.'s estate in equity; B. having died before A., and B.'s estate being so discharged at law.

APPEAL from the Circuit Court for the Southern District of New York; the case being this:

A statute of the State of New York thus enacts:

"No injunction shall be issued to stay the trial of any personal action at issue in any court of law until the party applying therefor shall execute a bond, with one or more sufficient sureties, to the plaintiff in such action at law, in such sum as the chancellor or master allowing the injunction shall direct, conditioned for the payment to the said plaintiff, and his legal representatives, of all moneys which may be recovered by such plaintiff or his legal representatives, . . . in such action at law, for debt or damage, and for costs therein."

With this statute in force, Pickersgill sued Lahens at law in the Superior Court of New York, a common law court, on certain indorsements. Thereupon Lahens filed a bill in the Court of Chancery of the State, for relief against the indorsements; and having done so, applied, under the above-quoted act, for an injunction to stay the trial at law. The court upon the filing of a bond meant to be such as the above-quoted act required, granted a temporary injunction staying the suit at law till an answer to the bill in chancery should come in. The bond was the *joint* bond (not the joint and several bond) of Lahens and one Lafarge; this Lafarge not having been any party to the suits already mentioned, nor interested in them, and not deriving any benefit from his joining in the bond. The bond recited the action at law against Lahens, the bill and injunction in chancery, and the condition of the instrument was that the obligors should pay all moneys which should be recovered in the suit at law. Answers to the bill for relief having come in, the action at law proceeded, and a judgment was rendered against Lahens for $129,000. Before this time Lafarge had died; and at the time Lahens had become insolvent. Thereupon Pickersgill filed a bill in equity against the executors

of Lafarge, to have his estate pay the amount of the bond, with interest from the recovery of the judgment against Lahens. The executors demurred; assigning among other grounds of demurrer that it appeared by the bill that Lafarge was not *severally* bound by the bond, but *only jointly* bound with Lahens; that Lafarge received no consideration for becoming an obligor; that he was not interested in any of the matters in consequence whereof the bond was given, and was merely a surety therein, and that he departed this life before the filing of the present bill, leaving Lahens surviving him, who was still alive. The court below sustained the demurrer; acting doubtless on the ancient principle of equity, announced with a clear mention of its grounds by GRIER, J., for this court, in the *United States* v. *Price,** that after the death of one joint obligor (the other surviving) the estate of the one deceased cannot be pursued in equity unless there was " some moral obligation antecedent to the bond;" the which obligation the court declared could not exist where the deceased obligor had been but a surety. To review the action of the court in sustaining the demurrer this appeal was taken.

*Mr. W. W. McFarland, for the appellant:*

If the fact that Lafarge is not shown to have had any direct pecuniary interest in the subject-matter of the action at law, or to have derived any personal benefit from the giving of the bond in question, is sufficient to bring the case within the decision made in the *United States* v. *Price,* the demurrer must be sustained. But we contend that in legal intendment both the obligors are to be regarded as principals, so far as the rights of the plaintiffs are concerned. In the case of statutory obligations of this character, it is the intention of the statute and not the intention of the party, that ought to control. The statute requires the bond to be given for the protection and indemnity of the parties, against whom

* 9 Howard, 90; S. C., on the circuit, under the name of United States *v.* Archer's Executors, 1 Wallace, Jr., 173.

the relief is sought, and whose rights are imperilled by its being granted, and it requires that sureties shall be given for the better security of the plaintiff. It is not a question of contract. The plaintiff has no election to accept or refuse to accept the bond. The only right he has in the premises, is to require that the sureties shall justify as required by the statute. The plaintiff had no right to say that the bond should be a joint and several obligation, nor had the court the right to say so. The language of the statute is, that "the party applying therefor shall execute a bond with one or more sufficient sureties." When the statute requires a bond to be given, and does not employ words of severalty, the fair if not the necessary intendment is that a joint obligation in form is intended; but it does not follow in such case that the statute intends or contemplates that the accident of the death of the sureties shall deprive the obligees of the security which the bond was intended to afford.

The intention of the statute doubtless here was, that the property of the principal and of the surety should stand charged with the liability assumed in favor of the plaintiffs, and we think that so the statute should be construed.

*Mr. F. Kernan, contra, with whom were Mr. T. J. Glover, for the executors of Lafarge, and Mr. F. H. Dykers, for Lahens.*

Mr. Justice DAVIS delivered the opinion of the court.

It is very clear that the estate of Lafarge is discharged at law from the payment of the obligation in controversy, on the familiar principle that if one of two joint obligors die the debt is extinguished against his representative, and the surviving obligor is alone chargeable. It is equally clear that in this class of cases, where the remedy at law is gone, as a general rule a court of equity will not afford relief, for it is not a principle of equity that every joint covenant shall be treated as if it were joint and several. The court will not vary the legal effect of the instrument by making it several as well as joint, unless it can see, either by independent testimony or from the nature of the transaction itself,

that the parties concerned intended to create a separate as well as joint, liability. If through fraud, ignorance, or mistake, the joint obligation does not express the meaning of the parties, it will be reformed so as to conform to it. This has been done where there is a previous equity which gives the obligee the right to a several indemnity from each of the obligors, as in the case of money lent to both of them. There a court of equity will enforce the obligation against the representatives of the deceased obligor, although the bond be joint and not several, on the ground that the lending to both creates a moral obligation in both to pay, and that the reasonable presumption is the parties intended their contract to be joint and several, but through fraud, ignorance, mistake, or want of skill, failed to accomplish their object. This presumption is never indulged in the case of a mere surety, whose duty is measured alone by the legal force of the bond, and who is under no moral obligation whatever to pay the obligee, independent of his covenant, and consequently there is nothing on which to found an equity for the interposition of a court of chancery. If the surety should die before his principal, his representatives cannot be sued at law; nor will they be charged in equity. These general doctrines on this subject were presented at large in this court in the case of the *United States* v. *Price*, and they are sustained by the text writers and books of reports in this country and England.*

The authority of the decisions on this subject we do not

---

* Story's Equity Jurisprudence, §§ 162, 163, 164; Simpson *v.* Field, 2 Chancery Cases, 22; Sumner *v.* Powell, 2 Merivale, 30; S. C., on appeal, 1 Turner & Russell, 423; Weaver *v.* Shyrock, 6 Sergeant & Rawle, 262; Hunt *v.* Rousmanier, per Marshall, C.J., 8 Wheaton, 212, 213; S. C., 1 Peters, 16; Pecker *v.* Julius, 2 P. A. Brown, 33, 34; Harrison *v.* Minge, 2 Washington, 136; Kennedy *v.* Carpenter, 2 Wharton, 361; Other *v.* Iveson, 3 Drewry, 177; Jones *v.* Beach, 2 De Gex, McNaughton & Gordon, 386; Wilmer *v.* Currey, 2 De Gex & Smales, 347; Waters *v.* Riley, 2 Harris & Gill, 311; Dorsey *v.* Dorsey's Exrs., 2 Harris & Johnson, 480, note; Bradley *v.* Burwell, 3 Denio, 65; Mr. Cooper's Note to Justinian's Institutes, p. 462, and cases there cited; Richardson *v.* Horton, 6 Beavan, 185; Wilkinson *v.* Henderson, 1 Mylne & Keane, 582; Rawstone *v.* Parr, 3 Russell, 539.

understand the appellant as questioning in a proper case; but he insists they are not applicable here.

His position is, that a statutory obligation like the bond in question is different in principle, and should be interpreted differently from a contract made by private parties between themselves, as the obligees in such a bond cannot direct the form it shall take, nor elect whether to accept or refuse it. The bond, which is the foundation of this suit, was given in 1846, under the order of the Court of Chancery of New York, to stay the proceedings in an action at law then pending in the Superior Court of the city, and it is argued, as the statute does not require bonds of this character to be "joint and several," in legal intendment they must be joint in form, and all the obligors, therefore, should be regarded as principals. It is undoubtedly true, as words of severalty are not employed, that a joint bond is a compliance with the law, but it by no means follows that a joint and several obligation is not an equal compliance with its terms. It is certainly not forbidden, and as the statute is silent on the subject the fair intendment is that either was authorized, and that the court had the right to direct which should be given. If this be so, then it cannot properly be said that the party enjoined had no voice in the nature or sufficiency of the security to be taken, for the discretion of the chancellor was, necessarily, to be exercised in relation to both these matters, if his attention was directed to them, after both sides were heard. It is quite apparent, if this discretion had been invoked, that the instrument of security might have been different; and equally apparent that Lafarge, in case this had been done, might have been unwilling to assume the additional risks which a separate liability imposed on him. We must suppose, in the absence of any evidence on the subject, that he knew the legal differences between the different kinds of obligations, and became bound in the way he did because a joint liability was more advantageous to him. If this was his intention, it would be manifestly unjust for a court of equity, after the legal *status* was fixed by his death, to change the nature of the obligation which

he executed in order to charge his estate. In the cases in which equity has treated the obligation as joint and several, although in form joint, the surety participated in the consideration. In this case Lafarge had no pecuniary interest in the litigation which was enjoined, and derived no personal benefit from the instrument of writing which he signed, and, therefore, no good reason can be furnished why his standing in a court of equity is not as favorable as if he were surety, without advantage to himself, in the borrowing of money. In neither case is there any obligation to pay independent of the covenant. In the one there is a liability for a debt; in the other, for a result in an action at law. Both are cases of contract, for, indeed, suretyship can exist in no other way; and we know of no principle of equity by which a contract of indemnity is to be construed so as to charge an estate, and an engagement to pay money to receive a contrary construction. The equities in both are clearly equal, and as the estate of Lafarge is not liable at law, it will not be held liable in equity.

The demurrer to the bill was, therefore, properly sustained, and the decree is accordingly

AFFIRMED.