CHARLES B. WOOD, Plaintiff, *v.* LUCY D. FISK, Executrix, etc., Defendant.

*Code,* § 335 — *death of surety*— *liability of estate of, on undertaking required by section* 335.

An action may be maintained against the estate of a deceased surety who was a party to an undertaking given, in pursuance of section 335 of the Code, to stay proceedings upon a judgment during the pendency of an appeal.

*Getty* v. *Binsse* (49 N. Y., 385) and *Pickersgill* v. *Lahens* (15 Wall., 140) distinguished.

Motion for a new trial on exceptions ordered to be heard in the first instance at the General Term.

The plaintiff recovered a judgment against William Belden, on the 20th day of November, 1867, for $2,530.41. An appeal was taken by the defendant from the judgment to the General Term; and, for the purpose of obtaining a stay of proceedings while that was pending, James Fisk, Jr., and W. B. Bradford executed an undertaking in the form prescribed by section 335, of the Code of Procedure. The judgment was reversed by the General Term, and an appeal was then taken by the plaintiff to the Court of Appeals, where the decision of the General Term was reversed, and the judgment as it was originally recovered was affirmed. Judgment to that effect was duly entered on the 9th day of July, 1873. James Fisk, Jr., died on the 7th day of January, 1872.

After the judgment of affirmance was entered on the decision of the Court of Appeals, an action was commenced and judgment recovered by the plaintiff against Bradford, on the undertaking given by himself and Fisk. An execution was issued against property, and returned unsatisfied on that judgment; and the plaintiff thereupon commenced this action against the defendant, as executrix of James Fisk, Jr., to recover the amount due on the judgment against Belden, with the costs of the appeal, upon the undertaking executed for the purpose of staying the plaintiff's proceedings when the appeal was taken. The court on these facts dismissed the plaintiff's complaint, and ordered the exceptions to the decision to be first heard at the General Term.

*Rastus S. Ransom*, for the plaintiff.

*Erastus Cooke*, for the defendant.

DANIELS, J.:

The decision made · by the learned justice who presided at the Circuit, was designed to follow and apply the rule maintained by the cases of *Getty* v. *Binsse* (49 N. Y., 385), and *Pickersgill* v. *Lahens* (15 Wall., 140). Those cases, following other authorities referred to in the opinions, hold that the creditor's remedy for the collection of his debt against a surety is extinguished by his decease ; that no proceedings can be maintained for its recovery against the personal representatives. The action in *Getty* v. *Binsse* (*supra*), was upon a joint note voluntarily given and accepted in that form ; and the liability of the estate of the surety upon it may, for that reason, have been controlled by considerations entirely inapplicable to the undertaking on which the present action was brought. In *Pickersgill* v. *Lahens* (*supra*), the suit was upon a bond given in compliance with a provision contained in the Revised Statutes of this State, prescribing the security which should be required to justify the issuing of an injunction to stay proceedings at law. (3 R. S. [5th ed.], 270, § 70.) That statute, in terms, required a bond conditioned for the payment to the plaintiff in the action proposed to be stayed, of all moneys which he might recover in such action for debt, damage or costs. No other provision was made defining the extent of the obligation to be incurred in its execution. And as the instrument required was one of a fixed and settled nature, upon which the liability of the persons executing it was clearly defined by the principles of the common law, there would seem to be no impropriety in holding the surety discharged, under circumstances ordinarily attended with that result, when a bond has been executed by him. By providing for a bond without prescribing its effect, that was left to be determined by the common law so far as it applied to instruments of that character. The statute did not declare under what circumstances the sureties might be discharged, but the common law had already done that when the enactment was made that a bond should be the instrument to be taken. And as that law was neither expressly nor

impliedly rendered inapplicable, it governed the liability of the sureties, as it did in all bonds so far as the statute did not interfere with it. The estate of the surety was for that reason properly relieved from liability, because the statute had left the common law applicable to the case, by omitting to declare what the effect of the decease of the surety should be upon his obligation. The same principle was applied to a joint and several bond, after a joint judgment had been recovered upon it, in the case of *The United States* v. *Price* (9 How. [U. S.], 90), under circumstances quite similar in their effect. But the present action was brought upon an instrument entirely unknown to the common law. It was purely a creature of the statute, devised for the accomplishment of a special purpose, that would be defeated, at least in part, by the application of this principle of the common law. Its object was to procure for the party on whose behalf it was given, a stay of all proceedings pending the appeal taken from the judgment, and to render the persons executing it absolutely liable for the payment of the amount recovered by an affirmance, if the appellant failed to satisfy it. For that purpose the statute required that it should be executed by at least two sureties, binding them to the effect that if the judgment appealed from or any part thereof should be affirmed, or the appeal be dismissed, the appellant would pay the amount directed to be paid by the judgment, or the part of such amount as to which the judgment should be affirmed, in case it should be affirmed only in part, and all damages awarded against the appellant on the appeal. (Code, § 335.)

It was clearly the design of the legislature to provide the respondent with a complete security for the payment of the judgment recovered by him, if, in the end, it should be either partially or wholly affirmed. And that would be entirely defeated in case of the death of both sureties, an event which in no instance can be altogether improbable, if the principle governing the exoneration of their estates at common law should be held controlling in the case. The law provides that new sureties may be required in place of those who may become insolvent after the undertaking has been given. But it has required nothing of that kind in case of their decease, unattended with insolvency. And that omission indicates it to have been the judgment of the legislature, that in that event

no further security could be required for the respondent's protection. While if the common-law principle relied upon in support of the decision made at the Circuit, applied to such a case, the judgment would still be stayed, and the appeal would proceed without any security whatsoever existing in the case. The provision made for this security could not have been designed to be subject to such a contingency, and yet it clearly would be, if the common law should be adopted as controlling in the case.

By another provision of the Code, the lien of the judgment may be entirely removed from the debtor's property during the pendency of the appeal, when the undertaking requisite to stay execution has been given. (Code, § 282.) And that certainly would not have been permitted, if the liability of the sureties in it had been designed to be contingent on anything else than the result of the appeal. If it had been, then the law would provide the means for wholly depriving the judgment creditor of security for its payment, instead of rendering it reasonably certain that the debt should be collected if the judgment proved to be correct. That would be clearly inconsistent with the object the legislature intended to secure by requiring the undertaking to be given.

The law prescribed the form of the obligation which the sureties were required to incur in order to stay the proceedings of the successful party during the pendency of an appeal from the judgment recovered by him. And that required them to become bound for the payment of the judgment, in case it should be affirmed, and the appellant failed to pay it. That was the only contingency on which their liability was rendered dependent. It was the express design of the legislature that they should become bound to that effect. And that would be defeated if the death of either should be held to discharge his estate from all the consequences of his undertaking. The law not only requires no such construction, but it would be inconsistent with the purpose intended to be attained by means of its enactment. The system devised was a new one, intended to be carried into effect, as far as that could be done, by means of its own provisions. Upon the effect of the undertaking which was entered into, they are reasonably free from doubt. And that was, that the sureties should pay the debt, in case

the judgment was affirmed and left unpaid by the appellant. The liability was established by the evidence given upon the trial of this cause, and a verdict should have been directed in the plaintiff's favor. The motion made in his behalf must be allowed to prevail, by setting aside the verdict and directing a new trial of the action to be had.

DAVIS, P. J., and BRADY, J., concurred.

Motion for new trial granted, costs to abide event.