Charles B. Wood, Respondent, *v.* Lucy D. Fisk, Executrix, etc., Appellant.

63 245
138 207

The contract of the sureties in an undertaking given upon appeal, in pursuance of the requirements of the Code (§§ 334, 335), is simply that of suretyship.

Where the language of such an undertaking was " we " * * * (giving names of sureties), " do hereby, pursuant to the statute in such case made and provided, undertake," etc., *held*, that the obligation was joint only, not several.

*Morange* v. *Mudge* (6 Abb., 243) overruled.

Also, *held,* that upon the death of one of the two sureties in the under-
taking, his estate was discharged both in law and in equity, and the sur-
vivor only was liable.

The fact that the obligation was given in pursuance of a statute does not
alter its plain import, or affect the liability thereunder. In cases of
suretyship, the contract is the measure of liability, and a statute under
which it is made will not be so construed as to enlarge the obligation of
the surety beyond the terms of his contract.

*Wood* v. *Fisk* (4 Hun, 525) reversed.

(Argued November 14, 1875 ; decided November 23, 1875.)

APPEAL from order of the General Term of the Supreme.
Court in the first judicial department, reversing an order grant-
ing a motion to dismiss the complaint on trial. (Reported
below, 4 Hun, 525.)

This action was brought against defendant as executrix of
the last will and testament of James Fisk, Jr., deceased, to
enforce an undertaking signed by him.

Plaintiff recovered a judgment in the Supreme Court in
November, 1867, against one William Belden. An appeal
was taken by defendant to the General Term, and for the pur-
poses thereof an undertaking was given, executed by said
Fisk and W. B. Bradford, which, after reciting the judgment
and the intent to appeal, was as follows :

" Now, therefore, we, James Fisk, Jr., of Fifth Avenue
Hotel, in the city of New York, and W. B. Bradford, of No.
159 West Twenty-third street, in said city, do hereby, pursu-
ant to the statute in such case made and provided, undertake
that the said appellant will pay all costs and damages which
may be awarded against him on said appeal, not exceeding
$500, and do also undertake, that if the said judgment so
appealed from, or any part thereof, be affirmed, or the appeal
be dismissed, the said appellant will pay the amount directed
to be paid by the said judgment, or the part of such amount
as to which the said judgment shall be affirmed, if it be
affirmed only in part, and all damages and costs which shall
be awarded against said appellant on the said appeal."

The judgment was reversed by the General Term and an
appeal was taken by the plaintiff to the Court of Appeals

where the decision of the General Term was reversed and the judgment, as it was originally recovered, was affirmed. Judgment to that effect was duly entered on the 9th day of July, 1873. James Fisk, Jr., died January 7th, 1872. After the judgment of affirmance was entered on the decision of the Court of Appeals an action on the undertaking was commenced and judgment recovered by the plaintiff against Bradford. An execution was issued and returned unsatisfied, and the plaintiff thereupon commenced this action upon the undertaking to recover the amount due on the judgment against Belden, with the costs of the appeal. The court dismissed the complaint and ordered exceptions to be heard at first instance at General Term.

*Homer A. Nelson* for the appellant. Upon the death of one of two joint obligors, who are merely sureties, the survivor only is liable. (*Getty* v. *Binsse*, 49 N. Y., 385; *Pickersgill* v. *Lohens*, 15 Wall., 140; *U. S.* v. *Price*, 9 How., 90; *Puckshafer* v. *White*, 1 J. & S., 267.) The contract of a surety is the measure and limit of his liability. (*McCluskey* v. *Cromwell*, 11 N. Y., 593, 601; *Rue* v. *Alter*, 5 Den., 119; *Benjamin* v. *Benjamin*, 5 N. Y., 383.)

*Rastus S. Ransom* for the respondent. The obligation of the undertaking was joint and several. (*Seacord* v. *Morgan*, 3 Keyes, 640; Code, § 335; *Morange* v. *Mudge*, 6 Abb., 243; 3 N. Y., 335.) A judicial bond must be construed by reference to the law in pursuance to which it was made. (58 N. Y., 319; 11 id., 598, 560; 3 Abb. Ct. App. Dec., 339; 2 id., 399.) As between plaintiff and themselves Fisk and Bradford were not sureties, they were bound by an original contract on their part for a good consideration to pay his judgment if it should be affirmed. (*U. S.* v. *Price*, 9 How., 83; *Thompson* v. *Blanchard*, 3 N. Y., 335; Chit. on Con. [9th Am. ed.], 450–452; 43 Barb., 131; *Slingerland* v. *Morse*, 7 J. R., 463; *Skelton* v. *Brewster*, 8 id., 376; *Gold* v. *Phillips*, 10 id., 412; *Rogers* v. *Newland*, 13 Wend., 114;

*Farlæe* v. *Cleaveland*, 4 Cow., 439; 10 How., 334; 25 N. Y., 486, 487; 2 Abb. Ct. App. Dec., 400.)

MILLER, J. The undertaking upon which this action was brought was manifestly a joint obligation on its face, and according to well settled rules applicable to such cases, the two obligors were mere sureties, and upon the death of one of them his estate was discharged both at law and in equity, and the survivor only was liable. In *Getty* v. *Binsse, Exr.* (49 N. Y., 385), it was held that upon the death of one of the makers of a joint promissory note, who was not liable for the debt irrespective of the joint obligation, but who signed the note simply as surety, his estate is absolutely discharged both in law and equity, and the survivors only are liable. The correctness of this rule cannot be doubted. It is true that in the case cited the note was given and taken in that form voluntarily, and not in conformity with any statute, as is the case here; but I am unable to see how that circumstance alters the liability of the defendant in this case, or that the provision of the Code, in pursuance of which the obligation in question was given, in any way affects or controls the plain import of the undertaking. It is true that the Code, under which the undertaking was executed (§§ 334, 335), provides that an undertaking shall be given and the form thereof, but there is nothing in the enactment which demands that it shall be joint or otherwise, or which indicates that it was designed to place any special construction upon the provision cited in reference to the nature or effect of the obligation which might be assumed. Concede that the object of the provision was to give to the party, for whose benefit it was executed, security for the judgment from which an appeal was taken, it by no means follows that this was to be done by placing a construction upon the language used in the instrument which might be executed, different from what it ordinarily would bear, and which would be unwarranted by the terms actually employed.

. The object of requiring two sureties to execute the under-

taking was to secure the judgment recovered, but not to prescribe language which could be used for such a purpose. It is not to be assumed that the legislature intended to define the effect of any particular words, or to say that in an undertaking, joint in form, the sureties should be severally liable. No such intention is manifest or legitimately to be inferred, and the question as to what the statute intended does not arise, for whatever the intention may have been cannot affect the language employed so as to give a construction to the instrument in contravention of its plain meaning. The language must be considered the same as if it had been used in any other instrument, and while proper terms, if inserted, might render sureties in such an undertaking severally liable, there is no sufficient reason for claiming, when they are omitted, that the instrument by a forced and constrained construction can be regarded as different from what it fairly imports. The interpretation given is amply sustained by authority. In *Pickersgill* v. *Lahens* (15 Wall., 140), an action brought to compel the executors of an estate to pay the amount of a joint bond which the testator had executed under a statutory provision, it was held that the estate was not liable. It was claimed in the case cited, as it is here, substantially, that a statutory obligation was different in principle, and should be interpreted differently from a contract made by private parties between themselves, as the obligors could not direct the form or elect whether they would accept or refuse it; and the court held that a joint and several bond was authorized, and that in the absence of evidence it must be assumed that the obligor knew the difference as between the different kinds of obligations, and became bound in the way he did because a joint obligation was more advantageous to him. The court say: "It is undoubtedly true, as words of severalty are not employed, that a joint bond is a compliance with the law, but it by no means follows that a joint and several obligation is not an equal compliance with its terms. It is certainly not forbidden, and as the statute is silent on the subject the fair intendment is that either was authorized,

and that the court had a right to direct which should be given." An attempted distinction is sought to be made between the case cited and the one at bar, because the instrument required in the former case was of a fixed and settled character upon which the liability of the persons executing it was clearly defined by the principles of the common law. It is not apparent how any such distinction can be applied, and no sufficient reason is shown why the rules referred to in the case cited cannot be invoked in the case now presented. This same principle was also upheld in the case of *The United States* v. *Price* (9 How. [U. S.], 90), and there is no distinction between the principle applicable to the case at bar and that laid down in the cases cited. In cases of suretyship, the contract being the measure of the liability, courts will not construe a statute under which such a contract is made in such a manner as to enlarge the obligations of the surety beyond the terms of his contract. (*McCluskey* v. *Cromwell*, 11 N. Y., 593.)

It cannot, we think, be claimed that the language of the undertaking was several. The case of *Morange* v. *Mudge* (6 Abb., 243), cited by the appellant's counsel, which holds that a similar undertaking is several as well as joint, is a Special Term decision, and not well considered. The only authority cited by DAVIES, J., who wrote the opinion, to uphold the doctrine laid down, is a case where there was a joint loan of money, which stands upon entirely a different principle from one where sureties sign an obligation in that capacity, as both parties received the benefit of the loan as principals. This is not in any respect analogous, and does not bear upon the question discussed.

It is insisted that the contract was not one of suretyship, but an independent original contract, for a valid consideration, to pay the judgment if it should be affirmed. The contract of the sureties was, that the appellant should pay all costs and damages, and the judgment, if the same was affirmed. It was for the benefit of the appellant, without any consideration of benefit to the sureties, and they were

only bound in the event that the appellant did not pay as he was liable to do. The instrument then was a collateral obligation; a mere contract of suretyship for the benefit of another who was originally, and continued to be, liable to pay, and nothing more or less than this. It could not have been made more explicit and clear if the undertaking had stated in so many words that the obligors were only sureties. Independent of the fact that this is manifest upon the face of the undertaking, sections 334 and 335 of the Code, in conformity with which the undertaking was executed, expressly provide for " two sureties," thus declaring, in direct terms, that the contract is one of suretyship. This would seem to settle any question which might arise in regard to the actual character of the obligation assumed.

We have been referred to some reported cases which, it is claimed, hold a contrary doctrine; but after a careful examination it is apparent that none of them are applicable to an instrument executed in pursuance of a statutory provision and bearing the characteristic features of the one upon which this action was brought. Without reviewing them it is sufficient to say that they all involve the question whether the agreement made was within the statute of frauds, and in most, if not all of them, each of the defendants who was prosecuted had made the debts of another their own by a valid agreement founded upon a new and sufficient consideration. There is no new and original consideration of benefit to the defendant here which brings the obligation within the principle of the cases referred to, and renders the obligors principals instead of sureties, independent of the statute which, as we have seen, declares them to be sureties.

Even although the liability of the sureties attach upon the affirmance of the judgment, and an action could then be brought immediately without any demand, it does not affect or change the relationship of the parties as the law has fixed them, or convert the sureties into principals.

It follows that the trial court was right in granting a nonsuit, and the order of the General Term should be

reversed and judgment ordered for the appellant upon the nonsuit, with costs.

All concur.

Judgment reversed.