LOUISA P. CHARD AND GEORGE A. GANE, AS ADMINIS-
TRATORS, ETC., WITH THE WILL ANNEXED OF RUFUS
C. PALMER, DECEASED, APPELLANTS, *v.* CORNELIA
HAMILTON, AS ADMINISTRATRIX, ETC., WITH THE WILL
ANNEXED OF ELISHA W. ENSIGN, DECEASED, RESPOND-
ENT, IMPLEADED, ETC.

*An obligor who is, in fact, a surety only — on his death his estate is discharged
from liability.*

Where one of three obligors upon a bond, executed before the enactment of section 758 of the Code of Civil Procedure, has no beneficial interest therein or in the moneys secured thereby, or in any of the dealings of the parties thereto leading up to its execution, and is a surety merely, and is known to be such by the obligee, and has not been secured by his principals in any respect, his estate, upon his death before the death of the principals, becomes discharged from any liability under such bond in equity as well as at law. (CORLETT, J., dissenting.)

APPEAL by plaintiffs, as administrators, etc., from so much and such parts only of the judgment entered, in the above-entitled

action upon the report and direction of the referee therein, in the office of the clerk of Chautauqua county on the 29th day of August, 1889, as awards judgment dismissing the complaint in the said action, in favor of the said defendant Cornelia Hamilton, as administratrix, etc., of Elisha W. Ensign, deceased.

*Samuel J. Crooks* and *Frank C. Ferguson*, for the appellants.

*Sherman S. Rogers*, for the respondent.

MACOMBER, J.:

The action was brought to foreclose a mortgage executed by George W. Holt and his wife Amelia, upon certain premises in the village of Westfield, and for the recovery of any deficiency which might arise upon the sale of such mortgaged premises. Judgment was sought, not only against the personal representatives of Holt and of Charles Ensign, but also against this respondent, Cornelia A. Hamilton, as the personal representative of Elisha W. Ensign.

The bond, as collateral security to which such mortgage was given, was executed by Charles Ensign, Elisha W. Ensign and George W. Holt to Rufus C. Palmer, the appellants' intestate, on the 1st day of June, 1872, and was conditioned for the payment by the obligors of $15,000 in one year from its date, with interest. All of the parties to the bond are dead, Elisha W. Ensign having died before either of the others. The referee dismissed the complaint on the ground, as stated in his opinion, that the estate of Elisha W. Ensign was discharged at law by his decease, and, inasmuch as he had no interest in the consideration of the bond, that he was, in fact, merely a surety, and that there was no moral obligation resting upon his representative to pay any deficiency which might arise upon the sale of the mortgaged premises. The obligatory part of the bond was as follows: " For which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, firmly by these presents." * * * " The condition of this obligation is such that, if the above-bounden Charles Ensign, Elisha W. Ensign and George W. Holt, their heirs, executors or administrators, shall well and truly pay, or cause to be paid unto the above-mentioned Rufus C. Palmer, his executors, administrators or assigns, the just and full sum of fifteen thousand dollars in one year from the date

hereof, with the interest, payable semi-annually, without fraud or delay, then the above obligation to be void, otherwise to remain in full force and virtue." Upon the face of this instrument the obligation of the promisors therein was joint, and not several. ( *Wood* v. *Fisk,* 63 N. Y., 245.) The words binding the executors and administrators of the obligors are of no moment in the construction of the instrument, and no point is made by the appellants' counsel that it was intended thereby to charge, at law, the estate of Elisha W. Ensign, in case he should die before the others.

If such a point were made, it would be untenable. ( *Waters* v. *Riley,* 2 Harr. & G., 305 ; *Bishop* v. *Church,* 2 Ves., 100 ; *Pickersgill* v. *Lahens,* 15 Wall., 140 ; *Richardson* v. *Horton,* 6 Beav., 185.) See, also, as inferentially containing the same principle, *Simpson* v. *Vaughan* (2 Atk., 31) ; *Thomas* v. *Frazer* (3 Ves., 399) ; *Burn* v. *Burn* (Id., 573) ; *Sumner* v. *Powell* (2 Mer., 30). As the rule stood at the time of the execution of this instrument the liability, at law, on the part of the estate of Elisha W. Ensign, ceased at his death, and the only obligation for the entire debt rested thereafter, at law, upon the surviving obligors. (Pomeroy's Eq. Jur., § 409 ;·2 Chitty's Cont., 1411 ; 1 Parson's Cont., 30, and the cases there cited and considered.)

As this case comes up upon the judgment-roll only, the appeal must be determined by the sufficiency of the findings, in any view which may be taken of them, to warrant the judgment pronounced. (*Agricultural Ins. Co* v. *Barnard,* 96 N. Y., 525.) There is an apparent discrepancy or contradiction between the seventeenth and eighteenth findings, on the one hand, and the twenty-first and twenty-second findings, on the other. By the seventeenth and eighteenth findings the referee holds that there is no evidence in the case that any agreement was entered into between Elisha W. Ensign and Rufus C. Palmer to the effect that the obligor should be bound as surety only for Charles Ensign and George W. Holt, or that Elisha W. Ensign intended to be bound in any other capacity than as principal on such bond. But, by the twenty-first finding, it is asserted that the bond in suit was executed by Elisha W. Ensign solely for the accommodation and benefit of Charles Ensign and George W. Holt, and, by the twenty-second finding, that the consideration of the bond was a balance of money due from Charles Ensign and

George W. Holt to the obligee, the plaintiffs' intestate, upon the sale by him to Charles Ensign and George W. Holt, as copartners of his interest in the propeller "Colorado," and for moneys borrowed by them, as such copartners, from the obligee, all of which facts the referee further finds were known to the said Palmer at the time of the execution of the bond.

Under these findings Rufus C. Palmer must be deemed to be conclusively charged with actual knowledge that the principals upon the bond were Charles Ensign and George W. Holt, and that Elisha W. Ensign was a surety only. This fact enables the personal representative of Elisha W. Ensign to interpose a complete defense to the claim made by the plaintiffs in this action, and she is not relegated to a mere right of action over against the estates of the two principals. (*Richardson* v. *Draper*, 87 N. Y., 337.) There appears, therefore, no equity existing in behalf of the appellants by which the estate of the surety, who had died before his principals, should be charged in this action, inasmuch as the instrument was executed before the passage of section 758 of the Code of Civil Procedure. Elisha W. Ensign not having any beneficial interest in the bond, or in any of the dealings of the parties leading up to its execution, and being but a surety merely to the knowledge of the obligee, and not having been secured by his principals in any respect, was, by his death before the principals, discharged of any liability in equity as well as in law. (*Getty* v. *Binsse*, 49 N. Y., 385; *Wood* v. *Fisk*, 63 id., 245; *Risley* v. *Brown*, 67 id., 160.)

The plaintiffs having failed to show that the estate of Elisha W. Ensign should be charged for the default of his principals the judgment appealed from should be affirmed.

DWIGHT, P. J., concurred

CORLETT, J. (dissenting):

At the time therein stated a bond was executed, of which the following is a copy:

"Know all men by these presents, that we, Charles Ensign and Elisha W. Ensign, of the city of Buffalo, and George W. Holt, of the village of Westfield, in the State of New York, are held and firmly bound unto Rufus C. Palmer, of Le Roy, Genesee county, and State of New York, in the sum of thirty thousand dollars,

lawful money of the United States of America, to be paid to the said Rufus C. Palmer, his executors, administrators or assigns, for which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents. Sealed with our seals. Dated the first day of June, one thousand eight hundred and seventy-two.

The condition of this obligation is such that, if the above-bounden Charles Ensign, Elisha W. Ensign and George W. Holt, their heirs, executors or administrators, shall well and truly pay, or cause to be paid, unto the above-named Rufus C. Palmer, his executors, administrators or assigns, the just and full sum of fifteen thousand dollars in one year from the date hereof, with interest payable semi-annually, without fraud or delay, then the above obligation to be void, otherwise to remain in full force and virtue.

CHARLES ENSIGN. [L. s.]

E. W. ENSIGN. [L. s.]

GEORGE W. HOLT. [L. s.]

Signed, sealed and delivered }
   in the presence of    }

JAMES W. BOOTH."

Elisha W. Ensign died on the 1st day of October, 1877; afterwards Charles Ensign and George W. Holt died. Charles Ensign and Holt had been partners, and they were owing Rufus C. Palmer, the plaintiff's intestate, at the time of the execution of the bond the sum of $15,000, which accrued in the course of the partnership business, to secure the payment of which the bond was executed. Elisha W. Ensign signed the bond, as the referee finds, solely for the accommodation and benefit of Charles Ensign and George W. Holt; he also finds that Palmer knew who created the debt, to secure the payment of which the bond was executed. This action was commenced in the lifetime of Palmer by a committee of his person and estate, he having been adjudged a lunatic. It was continued after his death by the plaintiffs, his administrators.

Charles Ensign and George W. Holt were utterly insolvent, and this action was brought to enforce the balance which should be found due after applying the proceeds of a mortgage executed at the time of the bond by Holt and wife to secure the payment of the debt. Issue was joined and the case referred. The referee made his report

on the 29th day of July, 1889. He found, among other things, that the defendant was not liable as administratrix upon the bond signed by Elisha W. Ensign, deceased.

No case was prepared, and the hearing here is upon the referee's findings and conclusions. The sole contention upon this appeal is, whether the estate of Elisha W. Ensign is liable upon the bond.

The seventeenth finding of the referee is : " That there is no evidence in the case that any agreement was entered into between Elisha W. Ensign and Rufus C. Palmer to the effect that Elisha W. Ensign was to be bound by said bond as a surety for Charles Ensign and George W. Holt, and that the last two named were alone to be considered by the said Palmer as the principal debtors to him upon said obligation."

The next finding was : " That there is no evidence in the case that Elisha W. Ensign contracted or intended to be bound on said bond to Rufus C. Palmer in any other capacity than as a principal thereon."

The nineteenth finding is : " That the obligation that Elisha W. Ensign entered into with Rufus C. Palmer by said bond was that of one of three principal joint-debtors thereon to said Palmer for the amount of $15,000 and interest secured thereby."

The eighth conclusion of law is : " That the said Elisha W. Ensign bound himself by said bond to said Rufus C. Palmer as a principal obligor therein."

It will be observed that the referee finds, in substance, that Elisha intended to bind himself to Palmer, and did so as principal, and that as between him and the other obligors he signed for their benefit and accommodation. There is no inconsistency between those findings. (*Berg* v. *Radcliff*, 6 Johns. Ch., 302 ; *The East India Company* v. *Boddam*, 9 Ves., 464.) To Palmer he bound himself as principal, but he did so for the accommodation of the other parties to the bond. The other finding is that Palmer knew that the debt which the bond was given to secure was due him from Charles Ensign and Holt.

The referee in his opinion states his position as follows : " It was necessary, in order to charge defendant Hamilton in equity for any deficiency that might arise upon the foreclosure and sale under the mortgage, to show that a moral obligation was imposed upon the obligor, Elisha W. Ensign, by the contract to pay the debt, *that*

*such surety owed the debt outside and irrespective of the joint obligation."* He cites some authorities in support of his position, among which is *Bradley* v. *Burwell* (3 Denio, 61), where it was held that where one died his estate was discharged at law but liable in equity; and *Richter* v. *Poppenhausen* (42 N. Y., 373), where it was held that the executor of a deceased partner could not be joined in an action at law to collect a partnership debt; *Getty* v. *Binsse* (49 N. Y., 385), where the instrument was a joint promissory note, one signed as surety for the other, the court held that the contract was the measure of the surety's liability, and that under the facts of that case his estate was discharged in law and equity; and *Richardson* v. *Draper* (87 N. Y., 337), where it was held: " The death of a joint obligor only discharges his obligation in a case where it appears that he was a mere surety who received no benefit whatever from the joint obligation." There the estate was held liable upon the facts.

In all the cases cited by the learned counsel and the referee, decided in this State, the obligations were joint. None of them, like the bond in question, bound the " *heirs, executors and administrators.*" The doctrine of the cases in this State (before section 758 of the Code of Civil Procedure, which has no application), was that the liability of the surety was limited to his contract, and that upon his death his estate was not liable at law or in equity. That in all the cases of joint contracts the death of one extinguished liability at law, but not in equity, and that as between sureties equity would compel contribution. The effect of words in a bond binding the heirs, executors and administrators of the surety does not appear to have been considered or determined in this State. In 87 New York, above cited, the judge delivering the opinion says: " The reasoning upon which the exemption of the deceased surety's estate from liability is founded, though sanctioned by numerous cases, is not very convincing, and has not always been viewed by judges and jurists with favor." It is the rule, " where findings of fact by a referee conflict, the defeated party is entitled to those most favorable to him, and may rely upon them in aid of exceptions to the referee's conclusion of law." (*Schwinger* v. *Raymond*, 83 N. Y., 192; *Bonnell* v *Griswold*, 89 id., 122.)

As above stated, the findings of the referee do not conflict; but if it should be held otherwise, the appellants may rely upon those favorable to their contention. The substance of the referee's findings is, that Elisha, as between him and Palmer, signed the bond and intended to do so as one of the principal debtors. The time of payment by the terms of the bond was extended one year. Upon whose request or suggestion this extension was granted by Palmer does not appear. It may be that Elisha consented to bind himself as principal in favor of Palmer, in whole or in part, on account of such extension, which is a valuable consideration (*Cary* v. *White*, 52 N. Y., 138), or there may have been dealings between him and the other obligors, or one of them, which caused him to assume the obligation of principal debtor. In the absence of a case, the circumstances attending the transaction cannot be ascertained outside of the findings. The form in which the bond was drawn is some evidence indicating that Elisha intended that his estate should be bound. It is true that the instrument is joint between him and his co-obligors, and that upon the death of either an action at law could not be maintained against the survivors and the representatives of the deceased; nor in the event of the death of all the obligors, could joint proceedings be maintained in equity to enforce payment, but if they were all joint-debtors, proceedings could be resorted to in equity to enforce payment. If any force attaches to the words of the bond, it is obvious that Elisha did not, in fact, limit or intend to limit his liability to a joint proceeding against the obligors, but he intended to bind his estate in case of his death before payment of the debt.

The learned counsel for the respondent cites *Pickersgill* v. *Lahens* (15 Wall., 140) as an authority for the position that the insertion of those words could not extend liability. The case is silent as to whether it was considered by the court or whether attention was called to that fact. The learned counsel is informed by those engaged in the case that, in fact, the bond was in that form. The question does not seem to have been considered in any of the other cases cited by the learned counsel. Attention has not been called to any case showing the effect of such words in a bond or contract. The exact question presented in this case does not appear to have been determined in this State.

The referee, as already shown, proceeded upon the assumption that, as Elisha was surety for his co-obligors, he was not liable to pay the debt outside of the bond, and that his estate could not be charged in equity. It is agreed that the estate of a deceased joint debtor is liable in equity, and the question under the findings here, is whether Elisha could bind himself as principal to Palmer, when, in fact, he was not liable for the debt outside of the bond.

Where a joint-bond is signed upon a good consideration to secure the payment of a debt, and it contains all the provisions needful to bind the obligor jointly with the others, and expressly charges his representatives, it is difficult to see upon what principle his estate should not be liable in equity.

In *Berg* v. *Radcliff* (6 Johns. Ch., 302), it was held that the estate of the surety was bound in equity, the fact that he was a surety for the other obligors could not be urged in equity as a reason why he should be relieved from the payment of the debt when the understanding was, as the findings show, that, as between him and the person accepting the bond, the debt should be treated as due from him. The legislature have interfered for the protection of creditors and the courts are not inclined to extend the rule exempting the surety's estate from liability. (*Richardson* v. *Draper,* 87 N. Y., 338–344; *Long* v. *Stafford*, 103 id., 274; *Deobold* v. *Oppermann et al.*, 111 id., 531.)

To uphold the judgment in this case, it is necessary to decide that it is impossible for a surety signing a joint bond to bind himself to creditors so that equity will enforce payment out of his estate. It is not believed that the adjudications go to that extent, or that equity will sanction such results.

The judgment should be reversed and a new trial granted before another referee, with costs to abide the final award of costs.

Judgment affirmed, with costs.