Argued 23 November; decided 26 December, 1899.

**PORTLAND TRUST COMPANY *v.* HAVELY.**

[59 Pac. 466, 61 Pac. 346.]

1. USURY—TRUSTEE FEES.—Where money is borrowed of a corporation which has power to accept and execute trusts, and as security it is given collateral notes and a deed of trust of lands, and it is required to receive and collect money on the collaterals, pay taxes, execute conveyances in case of sales of parts of the lands, and perform other duties as trustee, a provision for payment to it for its services as trustee, not being intended as an evasion of the usury law, does not make the loan usurious: *Balfour* v. *Davis,* 14 Or. 47, applied.

2. JUDGMENT AGAINST EXECUTORS OF JOINT SURETY.—On affirmance of a judgment or decree where a bond for stay of execution has been given, the sureties thereon are jointly and severally liable, regardless of the form of the bond, and judgment will go against the personal representatives of a deceased surety just as it would have gone against him had he lived.

From Multnomah : LOYAL B. STEARNS, Judge.

Suit by the Portland Trust Company of Oregon against J. C. Havely and others. Decree for plaintiff. Defendants appeal.                   AFFIRMED.

For appellants there was a brief over the names of *William Wallace Thayer* and *Henry St. Rayner*, with an oral argument by *Mr. Raleigh Stott* and *Mr. St. Rayner*.

For respondent there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Wirt Minor*.

MR. JUSTICE BEAN delivered the opinion.

This is a suit to foreclose a mortgage. The defense is usury. The facts, as they appear from the pleadings and evidence, are that in January, 1892, J. C. Havely, defendant, W. H. Kennedy, and J. H. Smith were the owners of a tract of land near the City of Portland known as "Woodstock," which had been laid off and platted into lots and blocks, the title to which was in the defendant, as trustee. On the twelfth of January he applied, as

such trustee, to the plaintiff for a loan of $28,000 on the property referred to, and, after some negotiations, submitted the following written application for such loan :

"*The Portland Trust Company of Oregon*—

GENTLEMEN : · I desire to procure from your corporation a loan of $28,000, and as security for said loan I offer the unsold property in Woodstock as per annexed schedule, the valuation of which, at the prices now held by the Woodstock Company, is $124,050, the same to be deeded to your corporation in trust, and to be retained on the market at the prices listed, or such prices as the conditions of the realty market will warrant, the power to regulate prices to be retained by me ; but no decrease from the prices now in force, as shown by schedule handed you, shall be made so as to affect materially your security.   I further offer, as collateral security additional to the real estate above mentioned, promissory notes in my favor amounting to about $27,700 (accrued interest to be added), with the understanding that I shall, should I so desire, be permitted to draw the amounts which may be paid in on said notes, less the accrued charges due your corporation ; your president, however, should he deem it necessary, to be privileged to limit the drawing out by me of such funds to one-half of said accumulations, after your accruing charges are paid.   I desire the trust to continue for the term of two years, the principal of said loan to be payable on any interest day in installments of not less than $500 ; and that deeds or bonds, as I may desire, be issued on the order of myself or my agents, and on sales made by them a commission of 10 per cent. to be paid them,—in all cases where the first payment is large enough, out of the first payment ; and in other cases, out of the payments which may be made from time to time, until their commissions are fully paid.   On all property which may be hereafter sold by myself or my agents, the proceeds therefrom, after paying said agents' commissions, are to be used by you in reducing the amount of indebtedness now secured by said trust, as fast as they can be applied, in the manner before stated.   I will further agree to pay your corporation for its services as trustee

the sum of $300 per annum, payable in monthly install-
ments of $25, during the continuance of the trust, but
agreeing that, in any case, said trust fees shall aggregate
not less than $600."

On the thirteenth of January his application was ap-
proved, and on the twenty-first of the month he conveyed
to plaintiff, by warranty deed, as security for such loan,
the unsold property in Woodstock, consisting of about
two hundred and twenty-five lots, and the promissory
notes referred to, and executed and delivered his note for
$28,000, due two years after date, bearing interest at the
rate of ten per cent. per annum.

At or about the same time plaintiff executed and de-
livered to him a certificate of trust, which, after certify-
ing that the real property therein described had been
conveyed to it by the defendant and his wife, by deed
absolute in form, declares that it was to be held in trust,
however, upon the following terms and conditions, to wit :

"Said Portland Trust Company of Oregon shall convey
all or any portion of said real property to such person or
persons, for such prices, and on such terms, as said J. C.
Havely, trustee, or his agents duly appointed, may in
writing direct ; *provided, however*, that no part of said
real property shall be so conveyed for a less price than
four hundred and fifty dollars ($450) per lot without the
consent in writing of said Portland Trust Company of
Oregon.  Said Portland Trust Company of Oregon, in
addition to said real property above described, also holds
for collection certain promissory notes, drawn and passed
by sundry parties to said J. C. Havely, trustee, and by
him indorsed, amounting in the aggregate to twenty-six
thousand six hundred and sixteen dollars and eight cents
($26,616.08), as more fully set out in two certain receipts
for said notes given by said Portland Trust Company of
Oregon to said J. C. Havely, trustee, dated 23d January,
1892, and 26th January, 1892.  The proceeds of said
promissory notes are to be applied by said Portland Trust

Company of Oregon in the same manner as the proceeds of said real property, *provided, however,* that said J. C. Havely, trustee, may, whenever all charges due to said Portland Trust Company of Oregon accrued at the time have been fully paid, withdraw not to exceed one-half of the net proceeds of said notes, any further withdrawal by him to be made only with the consent in writing of said Portland Trust Company of Oregon. Out of the proceeds of said real property and of said promissory notes, said Portland Trust Company of Oregon shall pay : (1) A commission of ten per cent. to the selling agents of the said J. C. Havely, trustee, on all sales made by them, out of the first payment received upon such sales, when said first payment is large enough ; and, in any cases where said first payment is not large enough, the remainder of said ten per cent. commission shall be paid out of the other payments which may be made from time to time, until said commission of ten per cent. is fully paid. (2) A certain promissory note, of which the following is a copy :

'$28,000.00.    PORTLAND, OREGON, January 23d, 1892.

Two years after date, without grace, for value received, I promise to pay to Portland Trust Company of Oregon or order, at the office of Portland Trust Company of Oregon, in said City of Portland, twenty-eight thousand dollars, and interest thereon, payable quarterly, at the rate of ten per cent. per annum from date until paid, all in U. S. gold coin ; and, in case suit is instituted to collect this note or any part thereof, I promise to pay such further sum as the court may adjudge reasonable as attorney's fees in said suit. This note is secured by real estate held by Portland Trust Company of Oregon in trust for the owner and holder hereof. This note may be paid before maturity, in installments of not less than $500 each, on any interest day.

[Signed]                            J. C. HAVELY,
                                         Trustee.'

(3) Any advances which said Portland Trust Company of Oregon may make for taxes, insurance, repairs, betterments, or other expenditures for the benefit of said real

property, or for the furtherance of this trust, shall be repaid to said Portland Trust Company of Oregon by said J. C. Havely, trustee, his successors or assigns, with ten per centum per annum interest thereon; *and provided, further*, that he shall pay to said Portland Trust Company of Oregon a trustee's fee of six hundred dollars ($600), payable in installments of not less than twenty-five dollars ($25) per month; *and provided, further*, that time and the exact performance of all the conditions hereof are of the essence of this contract; and in case default be made in the payment of any of said sums of money when due and payable as above provided, either of the principal, or any installment of interest, or any portion thereof, or of said trustee's fee, then the whole of the principal sum, and the interest accrued at the time default is made, and all other sums due hereunder, shall at once, at the option of said Portland Trust Company of Oregon, become due and payable, and may be collected forthwith by due process of law.''

The plaintiff thereafter continued to act as trustee, in accordance with the agreement, receiving and collecting money on the various collateral notes, paying taxes, executing conveyances, and otherwise performing the duties of its trust, until the twenty-third day of October, 1892, at which time the defendant and his co-owners, Kennedy and Smith, agreed to and did divide among themselves all the property so conveyed by the trust deed, and thereupon each executed and delivered to plaintiff a promissory note for his proportionate share of the amount then due on the $28,000 note, and received from it a certificate of trust for his individual portion of the property previously conveyed, in substance the same as the original except as to the amount of the note and trustee fees. The defendant Havely made default in the payment of his note, and this suit was brought for the purpose of foreclosing such trust deed, to which he set up usury as a defense, contending and alleging that the trustee fees were

designed and intended as interest on the money borrowed in addition to that provided in the note, and this is the only question to be determined.

1.   As to what constitutes usury, and the degree of proof required to establish a defense of that nature, has been quite well settled by this court.   It must appear that there was an agreement to pay and receive a greater rate of interest for a loan than is allowed by law :   *Balfour* v. *Davis*, 14 Or. 47 (12 Pac. 89).   And, to establish such a defense, the court requires clear and cogent proof, and will not accept vague inferences or mere probabilities : *Poppleton* v. *Nelson*, 12 Or. 349 (7 Pac. 492).   Where, by the terms of the contract between the lender and the borrower, the lender receives or reserves to himself a greater rate of interest than the maximum allowed by law, such a contract is affected with the vice of usury, and it makes no difference what device or shift may have been adopted in order to cover up the real nature of the transaction. But the borrower may employ the lender to do work or perform services, and pay him therefor, without rendering the transaction usurious.   Thus, where a commission merchant advances money to a customer, for which he is to receive, besides legal interest, a percentage as a commission for his services in the care, management, and sale of property, the agreement is not usurious, without proof of guilty intent :   *Cockle* v. *Flack*, 93 U. S. 344 ;   *Matthews* v. *Coe*, 70 N. Y. 239 (26 Am. Rep. 583).   So, also, where one applied to and obtained from a warehouse company a loan upon the security of certain bills of lading, and at the same time signed a written contract, which, after reciting the facts of the loan, provided that, in case he failed to pay at maturity, the company might sell the collateral at his expense, and reimburse itself, deducting from the proceeds a commission on the sale at the rate of two and one-half per cent., it was held that such trans-

action was not usurious : *Righter* v. *Philadelphia Warehouse Co.* 99 Pa. St. 289. And again, a contract of loan is not rendered usurious by a separate and distinct undertaking between the parties that the lender, who is a banker, is to receive the deposits of the borrower, and keep them safely, and pay them on demand, on condition that the notes discounted shall be paid in another city, by means of which an exchange of one per cent. is realized to the lender on the amounts of the paper discounted : *Beals* v. *Benjamin*, 33 N. Y. 61. So, also, where a party is solicited for a loan, and, in order to enable him to make it, must spend time and incur trouble and expense in collecting the money from others, and does this at the request of the borrower, and upon his agreement to pay for such services and expenses, the transaction is not usurious : *Thurston* v. *Cornell*, 38 N. Y. 281.

The principle to be deduced from these and other authorities is that whether the payment to the lender of more than the legal rate of interest is usury depends upon the facts of each case and the intention of the parties. If the payment is made or received for a loan or for the use of money it is usury, however disguised the transaction may be ; but if the excess is for other good and valuable consideration, and not used as a cloak to cover interest, the transaction will be upheld, and not regarded as usurious. Within this doctrine, it is apparent that the agreement between the defendant and the plaintiff does not contain any of the elements of usury. The plaintiff is a corporation, with power, among other things, to accept and execute trusts, and the compensation paid it in excess of the interest upon the loan was for its services as trustee, and not embraced within the mere relation of borrower and lender. It was, under the contract, obliged to execute conveyances of the mortgaged property to such person or persons as it might be sold to by the selling agents of the

defendant; to attend to the payment of taxes upon the property; to collect and keep an account of the money due on the numerous notes and contracts put up by the defendant as collateral security; and, in general, to perform many acts and duties requiring the time and attention of its officers and employees, not embraced in an ordinary contract for the mere loan of money. The reasonableness of the charge made by the company for the services contemplated is not at issue in this case, for it was fixed by the agreement at the time the contract was consummated. The simple question here is whether such compensation was intended by the parties as additional interest, and there is no testimony that it was understood or agreed that it should be paid for such purpose. Mr. Havely testifies, in effect, that his understanding was that the additional sum of $300 a year for trustee fees was paid in order to secure the loan, and perhaps this is true; but it was not paid, or agreed to be paid or received, with the corrupt purpose or intent of evading the usury law, and as a mere payment for the use of the money. It may have been exacted by the plaintiff, as a condition upon which it would make the loan, that the defendant should transfer to it, in trust, the real property referred to, and deliver the $26,000 in collateral notes, and that it should be permitted and allowed to act as trustee of the real property in question, and as the collecting agent of the collateral notes, and be paid a compensation therefor; but such an arrangement, made in good faith, would not render the loan usurious, because it was a payment for services rendered by the plaintiff in its capacity as a trustee. It follows that the decree of the court below must be affirmed, and it is so ordered.    AFFIRMED.

36 OR.—16.

Decided 11 June, 1900.

ON MOTION TO MODIFY THE DECREE.

[61 Pac. 346.]

*Messrs. Raleigh Stott* and *Ed. Mendenhall*, for the motion.

*Mr. Wirt Minor, contra.*

PER CURIAM. 2. This is a motion, the purpose of which is to prevent the entry of a decree against the personal representatives of H. W. Ross, who was a surety on the undertaking for appeal herein. The condition of the undertaking upon which the controversy hinges is as follows : "We, the said J. C. Havely and Anna Havely, the said defendants, as principals, and H. W. Ross, as surety, undertake that the appellants will pay all damages, costs, and disbursements which may be awarded against them on the appeal, and that the said appellants will pay any portion of such decree remaining unsatisfied after the sale of the property upon which the lien is foreclosed." Ross died intestate February 18, 1899, and on March 6 Lucinda Ross, his widow, and James C. Havely, were appointed administratrix and administrator of the estate. This is shown by the affidavit of the appellant J. C. Havely, and it is further shown that Ross had no interest in the suit, and received none of the consideration for any part or parcel of the relief awarded by the decree rendered by the circuit court in said cause. Based upon this showing, it is submitted that because the undertaking is joint in form, the death of the surety discharges his estate, and therefore no decree can properly be entered against his personal representatives upon the obligation. The common-law rule that an action at law cannot be maintained against the personal representatives of a joint obligor is well settled. Equity will interpose, however, and give a right of suit, where the surviving

obligor or obligors are insolvent, or the remedy at law
has been exhausted without avail : Pomeroy, Rem. §§
302–304.  So it is with a surety on a joint obligation.  If
he dies, there is no right of action left for the enforce-
ment of the obligation against his estate.  The cause of
action dies with the person, and the only remedy upon
the law side of the court is against the joint survivor or
survivors.  If, however, there is fraud or mistake, equity
will interfere to correct it, and, in proper cases, will give
a remedy against the estate of the deceased joint debtor
or obligor.  So, also, where the deceased joint obligor
has participated in the consideration forming the basis of
the joint obligation or demand, or where there is any
previous equity imposing a moral obligation upon such
obligor, equity will give relief against the estate of the
deceased obligor, because of the reasonable presumption
which obtains that the parties intended the obligation to
be joint and several, but that through some iniquity or
oversight it was made joint only.  But it is said : ''This
presumption is never indulged in in the case of . a mere
surety, whose duty is measured alone by the legal force
of the bond, and who is under no moral obligation what-
ever to pay the obligee, independent of his covenant, and
consequently there is nothing on which to found an equity
for the interposition of a court of chancery :'' *Pickersgill*
v. *Lahens*, 82 U. S. (15 Wall.) 140, 144.  See, also, *Wood*
v. *Fisk*, 63 N. Y. 245 (20 Am. Rep. 528) ;  *Getty* v. *Binsse*,
49 N. Y. 385 (10 Am. Rep. 379) ;  *United States* v. *Price*,
50 U. S. (9 How.) *84 ;  1 Brandt, Sur. (2 ed.) § 139 ;
Story, Eq. Jur. (13 ed.) §§ 162–164.

That this doctrine is well established, aside from any
innovation the code practice of the several states may
have impressed upon it, or any modifications thereof by
statutory provisions, there can be no cavil.  There is some
strong authority against it, but it cannot be considered

as overturning the doctrine, except in the special jurisdiction in which it has been announced : *Susong* v. *Vaiden*, 10 S. C. 247 (30 Am. Rep. 50). The rule grew up and has been established through the technicalities of common-law pleading, and upon the theory that a judgment could not be taken jointly against the estate of the deceased with the survivor upon the joint obligation. That this was purely technical, and without any inherent difficulty in the way of the entry of such a judgment, is now absolutely apparent, as exemplified under the equity and modern code practice. This is shown by the opinion of Mr. Justice McIVER in the case last cited. But, notwithstanding these well-established rules of law, we are not impressed with their applicability to the present controversy. The statute provides that, "within ten days from the service of notice of the appeal, the appellant shall file with the clerk an undertaking, as hereinafter provided ;" then, that "the undertaking of the appellant shall be given with one or more sureties, to the effect that appellant will pay all damages, costs, and disbursements which may be awarded against him on the appeal ; but such undertaking does not stay the proceedings, unless the undertaking further provides to the effect following : * * * When the decree appealed from is for the foreclosure of a lien, and also against the person for the amount of the debt secured thereby, the undertaking shall also be to the effect that the appellant will pay any portion of such decree remaining unsatisfied after the sale of the property upon which the lien is foreclosed." In sending up the transcript, the clerk is required to certify to the filing of the undertaking, whether by appellant or respondent, and set forth in his certificate the names of the sureties, the amount thereof, if specified, and, if given by the appellant, whether the undertaking is for an appeal only, or a stay of proceedings also ; and, when judgment or decree is given

against the appellant, the court is authorized and required
to enter the same against his sureties also, ''in like manner
and with like effect, according to the nature and extent
of their undertaking :''   Hill's Ann. Laws, § 537, subd. 2 ;
§ 538, subd. 4 ;   § 541, subd. 1 ;   § 546, subd. 4.   The un-
doubted purpose of the statute is to require the party ap-
pealing to amply secure the opposing litigant against costs
or damages in case the appeal proves unsuccessful, and
thus to prevent the instrumentalities of the law from be-
ing utilized for oppression, rather than for the purposes
of justice.   So, if the appellant would stay the enforce-
ment of a judgment or decree against him, the purpose
of the law is to give the judgment creditor security for
the payment of such judgment or decree without further
process, if and in so far as the same is affirmed.   Further
than this, the surety, by entering his name upon the ap-
peal bond, expressly covenants, in view of the statute,
that judgment shall be entered against him if the appel-
lant, his principal, fails to sustain the appeal :   *Beall* v.
*New Mexico*, 83 U. S. (16 Wall.) 535.   By so doing, he
makes himself a party to the record, and no further notice
is necessary to sustain or establish the jurisdiction of the
court in the entry of judgment or decree against him ac-
cording to the nature of his undertaking.   He is as much
bound by the judgment as is his principal :   *Holbrook* v.
*Investment Co.* 32 Or. 104 (51 Pac. 451) ;   *Brauer* v. *City
of Portland*, 35 Or. 471 (60 Pac. 378).

Now, coming to the very gist of the controversy, the
court is authorized to enter judgment against the surety,
also, according to the nature and extent of his undertak-
ing (that is to say, when the judgment of the court below
is sustained, then and in that event judgment should be
entered against his surety as well) ;   and it is not possible
that the legislature contemplated that any particular
form of the undertaking should be necessary to give the

court jurisdiction to enter judgment or decree against the surety. The judgment or decree to be rendered against the surety, within the contemplation of the act, is in its nature several—as much so as that against the principal, as the law requires the same judgment or decree to be entered against the surety, in like manner and with like effect, as against the principal. The words "according to the nature and extent of their undertaking" must be construed with reference to the fact whether the undertaking is given for an appeal only, or, in addition thereto, for a stay of execution, and it has no reference to the form of the bond or undertaking. The clerk is required to certify that an undertaking has been filed, and whether for an appeal only, or for a stay of proceedings also, no copy or form thereof being required to be sent up. It is enough to know that the undertaking is sufficient in its structure to bind the surety, and the court will enforce its purposes. There is no suit or action upon the bond, and the sole question is whether the surety has authorized the entry of judgment or decree against him, and the fact that the undertaking is in form joint, and not joint and several, or several, is not, as we believe, by legislative intendment, controlling. We have not overlooked the cases of *Wood* v. *Fisk*, 63 N. Y. 245 (20 Am. Rep. 528), and *Pickersgill* v. *Lahens*, 82 U. S. (15 Wall.) 140, 144, which declare, in effect, that the interpretation of the undertaking is not governed by the statute, but, rather, by the general rules applicable thereto. But we think that we have direct authority under the statute, regardless of the form of the undertaking in that respect, to enter the decree against the surety in like manner as it is entered against the principal. Such being the case, the form of the obligation being joint in tenor does not relieve the estate from the obligation. The motion will therefore be denied.    MOTION OVERRULED.